## BEBB v. PRESTON, Garnishee.

Where a garnishee answers, first, denying generally, that he owes the person as whose debtor he has been garnished, or that he has property, rights, or credits of such person in his possession; and secondly, by a special answer, shows that he does, in fact, hold property, &c., of such person in his possession, the plaintiff may take issue on the general answer, and is not obliged to put specific questions to explain the matters stated in the special answer.

The special answer is permitted, for the benefit of the garnishee, that he may not be obliged to assume the responsibility of categorical answers to the general questions.

Under section 1759 of the Code, the pleadings in a cause may be amended, after the case has been before the Supreme Court, and returned to the District Court.

Where a garnishee answered, denying that he was indebted to the original de-
fendants, or that he had in his possession any property, rights or credits, be-
longing to them; and also set forth that he held in his hands the proceeds
of certain property assigned to him for the benefit of certain creditors named
in the agreement between the defendants and the garnishee; and where the
plaintiff asked leave to file an amended replication, which alleged : " 1. That
the assignment under which the garnishee acted, embraced all the property ·
of the defendants not exempt from execution; that it was made in contem-
plation of insolvency; that it was made with intent to hinder and delay the
creditors of the defendants; and that it was fraudulent and void as against
such creditors.   2. That the said garnishee is indebted to the said defend- ·
ants, or one of them; that he owes them, or one of them, money or property
not yet due; and that he has in his possession or control, property, rights,
credits, and effects, of the said defendants, or one of them," which leave was
refused; *Held*, That the plaintiff had the right to show that the assignment
was void, under chapter 62 of the Code; and that the court should have al-
lowed the amended replication to be filed.
Where in a proceeding of garnishment, the garnishee claimed to hold certain
property and effects, by virtue of an assignment for the benefit of certain,
creditors, and the plaintiff for the purpose of showing that the assignment
was void, offered evidence to show that there were creditors not provided for
in the assignment, and that the assignment embraced substantially all the
property of the assignors, and was made in contemplation of insolvency,
which evidence was rejected; *Held*, That the evidence was admissible.

*Appeal from the Linn District Court.*

THIS cause was before this court at the December term,
A.D. 1855, when the judgment below was reversed, and will
be found fully reported in 1 Iowa, 460.   On the return of
the cause to the District Court, with a *procedendo*, the plain-
tiff asked leave to file an amended replication to the answer
of the garnishee, which replication reads as follows:

"And now comes the said plaintiff, and for amended re-
plication to the answer of Isaac M. Preston, garnishee, says:

" 1. That the assignment under which the said garnishee
acted as the trustee of Annis Hathaway, and which assign-
ment is dated the 12th day of January, A.D. 1854, a copy
of which is made a part of the answer of said garnishee, em-
braces all the property and effects of the said Hathaway, not
exempt from execution; that the same was made in contem-
plation of insolvency, and was made with intent to hin-
der and delay creditors of the said Hathaway, and said

Hathaway & Parkhurst; and that the same is fraudulent in law and in fact as against the said creditors.

" 2. And for other and further replication to the said answer, the said plaintiff says, that the said defendant is indebted to the said Hathaway, and the said Hathaway & Parkhurst; that he owes them, or one of them, money or property which is not yet due ; and that the said defendant has in his possession, or under his control, property, rights, credits, and effects of the said Hathaway, or Hathaway & Parkhurst; and the said plaintiff denies the answer, and each allegation thereof, to the first interrogatory answered."

The court refused to allow the amended replication to be filed, to which refusal, the plaintiff excepted. The parties then proceeded to trial ; and the plaintiff, for the purpose of showing that Hathaway & Parkhurst were indebted to creditors other than those mentioned in the assignment, previously to the date thereof, offered to introduce in evidence, two promissory notes, one for $886.34, to the plaintiff, Bebb, and one for $1,354.12, to Bowen & McNamee, and a copy of the judgment in favor of Bebb, on the foregoing note. This being objected to, the court ruled them inadmissible. The plaintiff then offered McIntosh as a witness, to prove that the property mentioned in the assignment to Preston, was all the property of said H. & P., and of said H. at the time of making the assignment. On the motion of the garnishee, this testimony was rejected. To all this the plaintiff excepted, and now assigns for error, the rejection of the said testimony, and the refusal to permit the filing of the amended replication.

*W. Penn. Clarke*, for the appellant.

1. Upon the first error assigned, I shall expend but few words. The statute expressly provides, that the court may allow material amendments *at any stage* of the proceedings, upon such terms, and subject to such rules, as it may prescribe. Code, § 1756. The court cannot deny the right to amend, but it may impose a penalty. The judgment having been reversed, the case stood as though there had been no

trial—as in fact there was none. It was competent, then, for the plaintiff to amend his pleadings, and it was error in the court to deny him that right.

2. This is a contest between a creditor and the garnishee of his debtor. The statute provides that when the answer of the garnishee is made at the District Court, the plaintiff may controvert any facts contained therein and specified by him, and issue being thereupon joined, may be tried in the usual manner. Code, § 268. What does this mean? What are the facts referred to by the statute? The statute gives the questions which may be propounded to garnishees; and in this case the garnishee answers the first two of those questions in the negative, stating that he is not indebted to the defendants in the principal case, and that he has in his possession, or under his control, no property, rights, or credits of said defendants. Are these, or either of them, the facts contained in the answer, and specified by the garnishee, which the plaintiff may contest, and on which there may be a trial? We think so, and for the plain and simple reason, *that they may be the only facts stated in the answer*. If the plaintiff stops at the interrogatories laid down in the statute, there *can be no other facts* in the answer, for the plaintiff to controvert. And treating the answer in this case, as if no other interrogatories had been propounded to the garnishee, and issue had been taken on his denial of indebtedness, or having property, rights, or credits of the defendant in the principal case, in his possession, or under his control, let us see what evidence would have been admissible, on the part of the plaintiff, to sustain the issue? Under the issue of property, &c., or no property, &c., in the hands of the garnishee, we insist that the plaintiff might have shown the following facts:

1. That Hathaway & Parkhurst, or Hathaway himself was heavily in debt, and in embarrassed circumstances;

2. That being pressed for payment, and threatened with litigation, by certain of his creditors, Hathaway made an agreement with the attorney of said creditors, by which he delivered to said attorney all of his stock of goods, wares,

and merchandise, with authority to sell the same on credit, pay certain creditors named in the agreement, and to pay the surplus proceeds of the sale to said Hathaway.

3. That the goods specified in the said agreement, embraced substantially all the property of Hathaway, and of Hathaway & Parkhurst, not exempt from execution; and that there were other creditors of said firm, and of said Hathaway, not named in the agreement, and for whose payment no provision had been made.

4. That the garnishee, at the time he was garnished, held in his hands, and under his control, the sum of $1,176.15 of the proceeds of the property received and held under the said agreement.

These facts being legitimate to the issue, if sustained by competent testimony, would give rise to a question of law, viz: the character of the agreement, and its sufficiency to pass the title to the property to Preston, the garnishee. To the consideration of this question of law, we shall come hereafter.

In this case, however, the plaintiff, not content with propounding the questions fixed by the statute, exercised his right, and puts other questions to the garnishee; and in answer to these interrogatories, two of the facts above suggested, are drawn out of the garnishee, viz: the agreement and the circumstances upon which it was made, and that the garnishee at the time of the service of the writ of attachment upon him, held $1,176.15 of the funds arising from the property conveyed by the agreement. Thus two of the facts necessary to be established by the plaintiff, were admitted by the garnishee, and no proof was required as to them. Two other facts, then, were left for the plaintiff to establish by testimony, viz: the indebtedness and embarrassment of Hathaway, and that the property delivered to Preston under the agreement, embraced substantially all the property of Parkhurst, leaving other creditors unprovided for. To establish these facts, the plaintiff offered two notes and a judgment against the firm of Hathaway & Parkhurst, and McIntosh, to prove that there was no property belonging

either to Hathaway individually, or to the firm of Hatha-
way & Parkhurst, other than that mentioned in the agree-
ment.  This evidence the court refused to allow to go to the
jury.  This was error, and so palpably so, under the view I
take of the case, as to require neither argument nor illustra-
tion.  If the testimony was competent, as will not be ques-
tioned, and relevant to the issue, in any degree, the court
improperly withheld it from the jury.  And had this testi-
mony been admitted, it would have made out and established
the four facts above suggested, and which, in my judgment,
it was necessary for the plaintiff to prove, in order to entitle
him to a judgment against the garnishee.

It may be well here to inquire, why it was necessary for
the plaintiff to establish the two facts last mentioned?  I
answer, that these two facts bear upon the character of the
instrument by which the property was delivered to Preston,
and are necessary in order to determine its legal sufficiency
to pass the title of the property to him.  If the instrument
only conveyed the property to Preston, to secure certain
creditors, leaving other property out of which other credit-
ors might be secured or paid, then the instrument was valid,
and transferred the property.  If, on the other hand, the in-
strument embraced all the property of Hathaway, and of
the firm of Hathaway & Parkhurst, and instead of being a
conveyance to secure certain creditors, amounted to an ab-
solute assignment of the property for the benefit of certain
creditors, to the exclusion of others, then the conveyance or
agreement was invalid, and could pass no title to the prop-
erty.  The agreement might be valid on its face, yet ren-
dered invalid by extrinsic circumstances.  Unimpeached,
the courts would presume in its favor; when impeached,
that presumption would cease to exist.  With the view of
impeaching it, the evidence rejected by the court was offered.
That evidence, if admitted, would have shown that the in-
strument, though purporting to be an agreement, was in fact
and in law, an assignment of all the property of Hathaway,
for the benefit of some of his creditors, to the exclusion of
others.  Without that evidence, no such question could be

raised, for the court could neither presume that there were other creditors, or that there was no other property. For these reasons, it was necessary to show, not only that there were other creditors, but that there was no other property out of which their claims could be realized. And on the broad questions, whether the garnishee had or had not, property, rights, and credits, belonging to Hathaway, in his possession or under his control, there can be no doubt, it seems to me, that the testimony offered was admissible.

With this testimony before the jury, and the four facts above stated, thus established, the legal question arose—what is the legal character of the agreement between Hathaway and Preston, and was it sufficient to vest the title to the property in the latter?   If the agreement was valid, it passed the property to Preston, and he could truly say, that he had no property, rights, or credits of Hathaway, in his possession or under his control.   If the instrument was *void*, it passed no title—the title remained unchanged in Hathaway—Preston held as trustee for Hathaway only, and not as trustee for Hathaway's preferred creditors—and the property, or the avails of it, in Preston's hands, was subject to attachment. The garnishee places his defence on this instrument, and claims to hold under and by virtue of that only.   It is the foundation stone of his claim to exemption from liability. If it stands, his answer is true—he has no property, rights, or credits of Hathaway.   If it falls, his answer is legally untrue, and he has property, rights, and credits of Hathaway in his possession or under his control; for it is too well settled to admit of controversy, that a void deed conveys no title.   What then, is the legal character of this instrument? We say that it is an assignment to Preston, in trust, for the benefit of certain creditors.  The instrument shows on its face that it is such.   It recites that Hathaway is indebted to certain persons, naming them, and the amount of their respective claims, and that they are about to commence legal proceedings to collect the same, and that the said Hathaway, for the purpose of paying said debts, *and for the consideration*

*and purposes aforesaid,* delivers to said Isaac M. Preston, attorney for claimants, &c., and after providing the manner of the sale, and for the payment of expenses, and the payment of the debts mentioned therein, requires the said Preston, to account for and to the said Hathaway, for the residue of the purchase money received for said goods upon the sale made as aforesaid. What is this, but the language of an assignment, and what stronger could be employed evidencing an intent to make an assignment? The consideration expressed, and the requirement to account for the surplus, are the very ear-marks of such an instrument. And the acts of Preston under the instrument, as detailed in his answer in this case, shows that it was so regarded and treated by both parties. No particular form of words is necessary in making an assignment, and any instrument by which property is vested in a particular person, for certain expressed purposes, is in legal contemplation, an assignment.

The instrument being an assignment for the benefit of creditors, the next question that presents itself is, was it a general assignment of property by an insolvent, or in contemplation of insolvency? and does it come within the purview of our statute? Section 977 of the Code, provides, that no *general* assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor, shall be valid, unless it be made for the benefit of all his creditors, in proportion to the amount of their respective claims. Code, 154. The word *general* used in the statute, applies to the property of the assignor, and includes *substantially,* all a man's property. *Mussey* v. *Baldwin,* 3 Liv. Law Mag. 24. Now, upon its face, the instrument does not purport to be *general,* or to convey all the property, nor does it purport to exclude any of the creditors of the assignor. Neither is it expressed in the instrument, that the assignor is insolvent, or that he contemplates insolvency. Should it show these things, or are they extrinsic facts, which may be established by *other testimony?* If it must appear upon the face of the instrument, that the assignment embraces all the

property of the assignor ; that it is made under the pressure
of threatened insolvency ; and that all the creditors are pro-
vided for, in order to render it a general assignment within
the meaning of the statute, then the power to evade the law
is placed within the hands of the assignor himself, and the
statute works a positive injury to creditors.   If it cannot be
shown by evidence *dehors* the instrument, that the assign-
ment, while purporting to be *partial*, was in fact *general*, em-
bracing all the property of the assignor; that other creditors
are unprovided for, and that it was made by an insolvent
person, then no assignment, however partial and unjust, can
be successfully assailed.  Such certainly, could not have been
the intention of the law making power.

But this question has recently been decided by the Su-
preme Court of Vermont.   In that state, the statute provides,
that " all general assignments hereafter made by debtors
for the benefit of creditors, shall be null and void as against
the creditors of such debtors."   In *Mussey* v. *Baldwin*, above
cited, the question was, whether an assignment was *partial*
or *general*, under the above statute ?   And the court held,
that it was " competent for such creditors as choose not to
come in under the assignment, always to raise the question,
whether an assignment claiming to be *partial*, is not, in fact,
*general*, and *to give evidence to show such fact, which under
proper instructions, is to be submitted to the jury*."   Now, here,
the assignment purports neither to be *partial* nor *general*,
either as respects the property or the creditors of the assign-
or.   Whether it is one or the other, is a question of *fact*, to
be established by testimony, and its validity depends entirely
upon that fact.   If proved to be partial, as respects the prop-
erty, it is valid ; if shown to be general in that respect, it is
void under the statute, for the reason that it does not pur-
port to be made for the benefit of all the creditors of the as-
signor.   Under the above decision, which I regard as con-
clusive, we had the right to establish that fact, or rather the
right to attempt to establish it, and offered so to do.   This
right was refused by the court, and herein was the second
error of the court.

*I. M. Preston, pro se.*

The answer of the garnishee denies, that he has money, rights, or credits, &c., except as stated in the answer, and then makes a full statement of the facts relating to the property in his hands.   Now, upon this answer, I contend that it is a question of law for the court to determine, whether said property is so held as to be liable to plaintiff's attachment, unless the answer is controverted.   In this case, the answer is admitted to be true.   But plaintiff contends that the answer itself shows the property to be liable.   If the plaintiff claims that he is entitled to recover upon the showing in the answer, then it is a question of law for the court, and not a question of fact for the jury.

Upon the settlement with Hathaway, on the 27th of January, 1854, everything relating to the goods were then settled, and if any trust ever did exist, it was then executed, and became absolute.   The evidence rejected by the court below, was irrelevant and immaterial, and did *not* tend to controvert any part of defendant's answer, upon the issue joined ; and if said evidence had been admitted, it could not have changed the result.

WOODWARD, J.—We have expressed the opinion, that the transaction between Hathaway and Preston, was in effect an *assignment* for the benefit of creditors.   The questions of the case, turn on this.   It is unquestionably clear as a proposition of law, that the plaintiff may show that this assignment is void, under chapter 62 of the Code, as being general, and made by an insolvent, or in contemplation of insolvency. In order to do this, he must show that there were other creditors not provided for, and that the assignment contained substantially all the property of the assignor.   The cause does not turn at all upon the property being that of Hathaway only.   The property of one partner is liable for partnership debts, and this may be such a case.   But the question here seems to be, whether he may do it upon these questions and answers.   It does not appear to us, upon what grounds the court below decided ; but we assume that it was that

some other and more specific question pointing to the particular matter, should be put to the garnishee.   Two considerations are to be regarded; one is, that the garnishee is to take care of his answer, and place himself within the law. It has been a rule pertaining to these proceedings (and may be still), that if the garnishee does not clear himself, but leaves any matter doubtful, when the requisite knowledge is within his proper reach, the answer shall be taken against him.   The other consideration is this, suppose the question to be put, whether there are other creditors and other property, and the garnishee to answer, that he *does not know.*   Is the plaintiff to be stopped by this?   This garnishee answers first, generally denying that he owes defendant, and that he has property, rights, or credits of his, in his possession; and secondly, by a special answer, showing how he does in fact, hold some property, &c.   Now, is the plaintiff *obliged* to put *specific* questions to draw out answers to the above named matters, before he can take issue, or may he take issue on the *general* answer.   After some doubt and consideration, we are of opinion, that he may take issue on the general answer. As we have intimated before, if the garnishee should answer that he *does not know,* this could not stop the plaintiff; and, further, the special answer is permitted for the benefit of the garnishee, that he may not be obliged to assume the responsibility of a categorical answer to the general question, but may explain the circumstances in which he stands.   This proceeding is not intended to be a burthen upon a garnishee. His rights are to be protected.   He is to be considered as an innocent and indifferent party, although it is well enough known, that sometimes they are not such.   Such they are, in contemplation of law, until the contrary be shown.   Therefore, we might not hold him to so technically correct an answer, as to exclude every presumption; but we feel constrained to say, that as the plaintiff may controvert his answer, and as the garnishee does not on his special answer, present any tangible matter upon which to raise the issue of fact or law, the plaintiff must be permitted to make that issue on the general answer.   The proposed amendment consists of two

parts or propositions. The second is, first, in natural order, being a general denial of the answer, by alleging that the garnishee is indebted, &c., while the first contains a specification of how, or by what means, he is indebted to, or has property of the defendant in his hands; so that we are inclined to view them as constituting but one allegation—one issue. If the plaintiff had simply averred that the garnishee was indebted, without pointing out how or wherein, there might have been a question of its sufficiency.

The remaining question, concerning the amendment, is, whether it could be made at that stage of the case—that is, after the cause had been taken to the Supreme Court? In this fact, probably consisted the reason of the refusal to permit the amendment, upon the ground that the cause must be tried anew upon the same pleadings. The 1759th section of the Code is: "The court may allow material amendments at any stage of the proceedings, upon such terms, and subject to such rules as it may prescribe." We should not be inclined to lay great emphasis upon the words "at any stage of the proceedings," for there is much reason in the argument, that they were intended to apply to the ordinary course of an action, before it comes to an appellate court. But taking into view this language, with the general tone of the Code, with reference to coming to the substance and merits of a cause, and considering that there is no really strong reason against it, apart from the question of costs, and then remembering that this matter of costs is *entirely* within the discretion of the court, we believe it permissible. The practice, even now obtains in substance. This court sometimes sends a cause back to the District Court, with leave to amend. We will hold that the court should have allowed the amendment, believing that the practice will tend to the ultimate attainment of truth and justice.

Another error assigned, is the rejection of the evidence offered; that is, the notes, the judgment, and the witness, McIntosh. The foregoing remarks show, that in the opinion of this court, they should have been received, at least with the amendment, if not under the former pleading.

The garnishee makes the question in his argument, whether he can be charged after the settlement which he alleges that he made with Hathaway. This is not within our reach. The judgment of the District Court is reversed, and a writ of *procedendo* is awarded.