AHERN v. THE DUBUQUE LEAD AND LEVEL MINING CO. ET AL.

1. **Mines and Mining:** DRAINAGE : CONSTITUTIONAL LAW. Section 1229 of the Code, providing that any person who shall by drains or adit levels, rid lead-bearing mineral lands of water, making them productive or available for mining purposes, shall be entitled to receive one-tenth of all the lead mineral taken therefrom, is not in conflict with the constitution.

   *Argument* 1. The statute is identical in principle with those regulating party walls and partition fences, and provides only that one should compensate another for outlays lawfully made by which he himself has been benefited.

   *Argument* 2. The act of building the adit is lawful, because it tends to promote the public interest, and is productive of public good. ROTHROCK, Ch. J., and SEEVERS, J., *dissenting.*

Appeal from Dubuque District Court.

TUESDAY, APRIL 16.

THE petition alleges that plaintiff is the owner of certain mineral lands, and leased the same to the defendant, the Dubuque Lead and Level Company, on condition of receiving one-fifth part of all mineral raised; that defendant has raised a large amount of lead ore, and that plaintiff is entitled under the law to recover the value of one-fifth thereof. Defendant Chamberlain intervened in the action, and answered the petition, alleging that "he is now, and previous to the time of raising the mineral claimed by plaintiff he was, the owner of an adit level running through the premises of plaintiff, made for the purpose of draining the mineral lands through which it runs, including the lands of said plaintiff; that by said level the lands of plaintiff were drained of water, and by reason thereof the mineral * * * * * was obtained and raised, and the lands rendered productive and available for mining purposes, and under the laws of Iowa this defendant, as the owner of said level, is entitled to one-tenth of the mineral."

A demurrer to this answer was overruled, and from the decision thereon plaintiff appeals.

*Wilson & O'Donnell* and *Griffith & Knight*, for appellant.

*Shiras, Van Duzee & Henderson* and *Fouke & Lyon*, for appellee.

BECK, J.—I. The questions raised by the demurrer involve the constitutionality of the statute under which defendant claims to recover one-tenth of the mineral as owner of the adit level. Our attention, therefore, is directed to the consideration of that statute, which is as follows, being Code, § 1229:

"Any person or corporation, who, by machinery, such as engines or pumps, or by making drains or adit levels, or in any

1. MINES and mining: drainage: constitutional law. other way, shall rid any lead bearing mineral lands or lead mines of water, thereby enabling the miners and owners of mineral interest in said lands to make them productive and available for mining purposes, shall be entitled to receive one-tenth of all the lead mineral taken from said lands, as compensation for such drainage." The three following sections prescribe the remedy that may be pursued to recover the mineral, or the value thereof, by the person or corporation draining lands as contemplated by this section. Two sections next following give the right of way for the purpose of carrying the water away from the mineral lands, and provide for the means of determining the compensation to be paid the land owner.

Plaintiff insists that this statute is unconstitutional, in that under its provisions a citizen may be deprived of his property without due process of law, and his property may be in a compulsory manner taken by another for private purposes.

Certain familiar principles applicable to the judicial interpretation of the constitution may properly be stated here. They demand, for their support, neither the citation of authorities nor argument, for they are familiar to the profession.

Courts will declare statutes unconstitutional only in cases that are free of well founded doubts. If a statute be capable of a construction that will remove constitutional objections, it will be adopted instead of a different construction which would bring the law in conflict with the constitution. If a statute have different provisions, some of which are unconstitutional, and others constitutional, the latter will be supported and enforced. So if separate provisions of a statute, or separate statutes in *pari materia*, are not all constitutional, those which are will be enforced.

It is argued that those provisions of the Code conferring upon the owner of an adit level the right to take and condemn the right of way over lands, and to construct shafts and air holes, are in conflict with the constitution under prior decisions of this court. It is unnecessary to enter into an inquiry upon the question here raised. The pleadings do not show that defendant is attempting to enforce the authority conferred upon him under the section of the Code referred to; nor does it appear that he ever has exercised, or attempted to exercise, that authority. The pleadings show that he is the owner of an adit level. If he, in connection therewith, has any right of way, we will presume that it has been lawfully acquired in some other way than by condemnation under the statute, if that be unlawful. It, therefore, clearly appears that no question involving the validity of the provisions of the statute authorizing condemnation of right of way is in this case.

II.   The only question in the case involves the validity of section 1229, above quoted. We will briefly proceed to consider its provisions with a view to determine its constitutionality. It authorizes the owner of an adit level to recover a compensation for the benefit his outlay of money and exercise of skill have bestowed upon owners of mines. The work resulted in freeing the mines of water, which had rendered them valueless. It was intended for his own benefit, but so intimate were the relations between his property,

Ahern v. The Dubuque Lead and Level Mining Company.

whereon the work was done, and the property of the person benefited, that it could not be constructed for his own purposes without conferring benefit upon the other. The mine-owner avails himself of the skill and work of the owner of the adit, and raises mineral. *Ex æquo et bono,* he ought to render compensation to the owner, whose outlays have enriched him. The common law will not give to the owner of the adit a remedy. The statute in question does. We are utterly unable to discover any particular where it is in conflict with the constitution. It is identical in principle with the statute regulating party walls and partition fences, and is not unlike the statutes relating to the drainage of swamp and coal lands, and the change of water courses. The statutes applicable to lost goods and rafts, and vessels adrift, involve the same principles.

The foregoing remarks contemplate the case of the owner of the adit level holding lands other than by condemnation, under the provisions of the Code above referred to, and that he owns, or is a lessee of the land, or in some other way acquired the right to construct the adit. The case presents this aspect, for, as we have before said, the pleadings do not show how defendant acquired the possession of the land upon which his work is situated. We are required to presume, in the absence of a showing to the contrary, that he acquired it lawfully. If he could not acquire it under the statute, then we must presume he did not.

The objections to the validity of the statute urged upon our attention are indefinite, and rather present general thoughts as to the sacredness of private property and rights, which the law protects, than point out how these are interfered with in an unconstitutional manner by the statute in question. It is said an adit was constructed without plaintiff's knowledge and consent, and its owners are now claiming to take plaintiff's property without his consent. The first statement of this proposition may be admitted as true; the second cannot be. The plaintiff is not compelled to work

his mine drained by the adit. If he does, the law requires him to render one-tenth of the ore, or its value, as compensation for the benefits he derives from the adit. There is no taking of private property, but the recovery of compensation for benefits rendered. It is an entirely voluntary matter with the plaintiff to work his mine, and thus be brought under obligation to render compensation to defendant. The law presumes he consents to rendering the compensation when he avails himself of the benefits for which the law declares he' shall render compensation. The fact that the adit was constructed without plaintiff's knowledge and consent in no manner affects his rights. A bridge or a mill is built without the knowledge or consent of those who use it, yet when a man crosses the one or has his grain ground at the other, he is under obligation to pay the tolls fixed by law.

It is urged, against the validity of the statute, that it fixes the compensation to be rendered to the owner of the adit. It is insisted that this invalidates the statute. It is claimed that the compensation ought to be determined by a court and jury, or the Legislature ought to provide some other tribunal to assess the compensation to be paid for the benefits received from the adit. This position does not deny the right of the Legislature to provide for the recovery of compensation, but assails the statute as unconstitutional, on the ground that the compensation is fixed by the Legislature itself. The objection is most manifestly unsound. The Legislature can fix the tolls to be charged by mill owners, and the owners of bridges; the charges to be made by the owner of wharves, docks, elevators, etc., and can prescribe a tariff of freights to be charged by railroad corporations. It is not claimed that a court and jury, or other tribunal, shall be called upon to determine the compensation to be charged in such cases. *Dubuque v. Stout,* 32 Iowa, 80; *Dubuque v. Stout,* Id. 47; *Munn v. Illinois,* 4 Otto, 113; *C. B, & Q. R. Co. v. Iowa,* Id. 155; *Peik v. C. & N. W. R'y Co.,* Id. 164; *Winona & St. Peter R'y Co. v. Blake,*

Id. 180. These cases, so far as they involve legislative power, are not different from the one before us.

It is said, with earnestness indicating alarm, that if the Legislature may prescribe one-tenth it may one-half, or the whole of the mineral raised by the owner of a mine, compensation to be paid to the proprietors of the adit. It is not at all permissible for the courts to rob other branches of the government of their constitutional authority, on the ground of a fear that in some imaginary case the power may be oppressively exercised. We must presume that legislative authority will always be fairly, justly and constitutionally exercised. The Legislature has authority to determine the compensation to be given the owner of the adit; the courts must presume the determination is just.

The cases above cited abundantly support the position that if the Legislature possesses the power to authorize the owner of the adit to collect a compensation from those benefited by the work, and impose an obligation upon the person benefited to pay, it has the authority to fix that compensation.

It is said that the statute, in providing a per centum of the mineral as a compensation, cannot operate justly or equally in all cases, for the compensation ought to be greater in some cases than in others. This may all be admitted. The doctrine, if adopted by this court, would lead us to hold the statutes authorizing fixed rates of tolls for ferries and bridges, those providing for tolls to be collected by mill owners, and those fixing compensation for recovery of rafts and vessels adrift, all unconstitutional. In some cases, the persons receiving compensation would realize more for their outlays and labor than would be received in other cases. But these statutes have never been assailed on this ground. No case can be found where a court has refused to support a law on the ground that it operated unjustly in some cases—was not so framed that it would have an equal operation in all conceivable cases. The courts inquire whether the Legislature has

the authority to enact a statute. If the power is found, they do not inquire into its operation, and hold it void because of some imaginable inequality that may occur in its enforcement. But we have devoted more time to this branch of the case than it merits.

III. It is said that the pleadings do not show that the owner of the adit constructed it for the purpose of raising mineral from his own land; that unless he holds an interest in mineral he could not have such community of interest as would make the plaintiff liable to him for compensation on account of the benefit enjoyed.

This point was not made in the court below, and cannot really arise upon the record. The demurrer to defendant's answer was based upon the ground, and no other, that the act under which defendants claim the mineral is unconstitutional. The extent or nature of defendant's interest in the mineral affected by the adit, or whether he had or had not any such interest, were not matters alleged or denied by the pleadings preceding the demurrer. The objection under consideration goes to the rights of defendant under certain conditions—that is, he can have no right which a court will enforce, unless he has an interest in the mineral affected by the adit. This, it will be at once seen, involves a matter of fact. No such fact is presented or denied in the pleadings, and the absence of allegations in respect to it is not a ground of demurrer. There can exist no reason for disturbing the decision of the court below, whatever conclusion we may reach upon this point.

In view of the fact that the point has been fully discussed by counsel of both parties, we present briefly our conclusions thereon.

As we regard the law, defendant's rights cannot be based on any community of interest between him and plaintiff, but rather upon the fact that plaintiff is benefited by a work which it was lawful for defendant to do, that is, a work hav-

ing for its object the draining of all mines generally in that locality.

Is such a work for such an object lawful? We cannot doubt that it is, for this reason: It bestows benefits upon owners of mines, by enabling them to obtain valuable metals that were before inaccessible; it restores, as it were, to them their property. In this view the adit owner acts the part of the finder of lost property, or of one who takes a vessel adrift. Surely the statute which enforces compensation from the owner that has been benefited cannot be unconstitutional. It is identical in principle with the statute relating to lost goods and watercraft. If there was no statute on the subject, it cannot be doubted that one, by means of an adit, might lawfully drain all the mines in his neighborhood. The owners, *ex bono et æquo*, ought to compensate him. But, in the absence of a statute, he cannot recover compensation. The section of the Code cited is intended to compel the mine owners to do that which, in good conscience, they ought to do.

The act of building an adit is lawful, for the reason that it is a matter of public interest, and of great public good. To develop wealth, by uncovering the mines of rich metals, tends to promote public prosperity.

We conclude that, however obnoxious the other provisions of the Code relating to the rights of the owner of an adit may be, the section authorizing him to recover compensation from the owners of mines, for the benefits they have received from his skill and outlays, is not unconstitutional. Surely we may hold it is not so plainly and palpably in conflict with the supreme law of the State, and upon the question there is not such absence of doubt that we are required to hold it invalid.

AFFIRMED.

ROTHROCK, CH. J., *dissenting.*—Believing that the foregoing opinion is fundamentally wrong, and that the principles

therein announced, if carried to their logical results, will seriously impair the property rights of the citizen, I will as briefly as can be done, consistent with the importance of the question involved, give the reasons for my dissent.

The provision of the Constitution of this State,. that "no person shall be deprived of life, liberty, or property, without due process of law," is substantially the same as that contained in the amendments to the Federal Constitution, and in the constitutions of the several States. These provisions are familiar, not only to the legal profession, but to the public at large, and are justly regarded as the great safeguard of the liberties of the people. "In *Magna Charta* they were wrested from the King as restraints upon the power of the crown. With us they are imposed by the people as restraints upon the power of the Legislature." If disregarded by the courts, the life, liberty, and property of the citizen are at the mercy of arbitrary power. It may seem that these remarks betray unnecessary alarm in view of the small importance to the public of the question whether appellant in this case shall deliver to appellee one-tenth of the lead ore raised from the mine upon appellant's land. But when the principles of the foregoing opinion come to be applied to other, greater, and more varied interests affecting the public at large, it will, in my opinion, be just cause for serious apprehension.

What is "due process of law?" It is properly defined as "Law in its regular course of administration through courts of justice." Bouvier's Law Dic., Vol. 1, 512; Story on the Const., 264, 661; 18 Howard, 272; 13 New York, 378.

It does not mean the act of the Legislature which deprives the citizen of his life, liberty, or property. If such is its meaning, a fair construction of the constitution would be, that no person should be deprived of these rights, unless the Legislature should pass a law taking them away. This would be an absurdity, and with such construction the constitutional limitation of power would be a barren ideality, utterly meaningless.

It is said in the majority opinion that the statute in question is identical in principle with the statute regulating party walls and partition fences, and is not unlike the statutes relating to the drainage of swamp and overflowed lands, and the change of water courses.

As I read these statutes they are wholly unlike the one under consideration, so far as the authority or power attempted to be exercised by the Legislature is involved. In each and all of them, the Legislature has provided a tribunal clothed with judicial power, to determine what the owner of the property shall pay for the benefits received. What would be thought of these statutes if their provisions should arbitrarily fix the value of a brick partition wall at so much per foot, or the value of a partition fence at so much a rod, or, to make an illustration more pertinent to the question before us, require the owner of land reclaimed by a drain or ditch, to give to the proprietor of the drain or ditch one-tenth of the corn grown upon the land, without regard to the value of the corn, or the cost of constructing the ditch, and without regard to whether the owner of the land consented to the making of the ditch or drain? With due deference, I submit that if legislation of the character supposed is not depriving the citizen of his property without "due process of law," then it is competent for the Legislature to enact that a person may become indebted without his consent, and require him to pay the debt in property at a certain fixed and arbitrary value.

The majority opinion also likens the law in question to the statutes applicable to lost goods, and rafts and vessels adrift. It must be admitted that these statutes are in principle the same, with this important exception: The finder of lost property, and one who takes a vessel adrift, is, under the statute, entitled to a percentage of the value of the property, while in the statute under consideration, one who constructs an adit level is entitled to one-tenth in kind of the mineral reclaimed, without regard to its value. This tithing is required to be paid as long as the mine shall be worked, without regard to the

rise and fall in the market price of the mineral.   I know of no case where the question as to the validity of the statutes applicable to lost goods and vessels adrift has been raised, but in so far as they attempt to fix an arbitrary compensation to the finder, I think they are void.

The opinion further holds that the objection that the Legislature has no power to arbitrarily fix the compensation is most manifestly unsound, because it has been held that the Legislature may fix the tolls to be charged by mill owners, and the owners of bridges, the charges to be made by the owners of wharves, docks, elevators, etc., and can prescribe a tariff of freights to be charged by railroad corporations.

All this must be admitted, and yet I think these powers of the Legislature are based upon a different principle from the statute under consideration.   They are intended to protect the public against exorbitant and unreasonable charges made by powers and corporations, who have a monopoly of certain lines of business, and to fix a limit beyond which they shall not charge for certain services.   They do not exact anything from the citizen without his consent.   By such legislation no person is required to take his grain to a mill, or his freight to a railroad.   He can use his own property as he sees proper, and no one, without his act, has the right to demand one-tenth, or any part of it.   In the case at bar, the owner of the land, whose right to the sole and exclusive possession extends to the center of the earth, is required to deliver one-tenth in kind of his mineral, without regard to its value, to some one who has drained his land without his consent.   He must either do this or cease to use his own property in his own way.   He is told if he digs in his own soil, and piles up the earth on his own land, he must deliver to another one-tenth of the fruits of his labor, for a benefit to the land, by reason of the drain, and his lips are sealed against disputing the justice of the compensation.   I deny that another can be empowered by the Legislature, without his consent, to construct a drain,

and then control the exercise of his rightful dominion over his own land, by requiring him to pay tithes.

The majority hold that the Legislature has the authority to fix the compensation to be given to the proprietor of the drain, at one-tenth of the mineral reclaimed and raised, and the courts must presume the determination of the Legislature is just. Suppose that the statute required appellant to give one-half, or all the mineral raised. As, in the opinion of the majority, the power to fix the amount is in the Legislature, must the courts still presume that the determination of the Legislature is just? At what point, in the exercise of this power, may this presumption become disputable?

If the power be conceded to be in the Legislature, and the courts must presume it has been justly exercised, there is no middle ground between a reasonable compensation and total confiscation. Just compensation, and that only, can be recovered, and this case be determined by a judicial tribunal, and in no other constitutional manner.

SEEVERS, J., concurs in this dissent.