GUS FLOOD, Appellee, MORRIS LUNDQUIST, Intervener, Appellant, v. CITY NATIONAL BANK of Clinton, Appellant.

No. 43131.

NOVEMBER 12, 1935.

REHEARING DENIED FEBRUARY 15, 1936.

E. L. Miller, H. B. White and Havner, Flick & Powers, for appellant.

A. P. Barker, and Davis, McLaughlin & Hise, for appellee.

Cook & Balluff, and Sinnett & Britton, for intervener.

KINTZINGER, C. J.—■■■ This is a second appeal of this case. It is an action to recover the statutory reward for finding of lost property, under section 12211 of the Code. The opinion on the first appeal is reported in 218 Iowa 898, 253 N. W. 509, 95 A. L. R. 1168, to which reference is made for a statement of the facts. After the case was returned for retrial, the defendant filed an amended and substituted answer substantially alleging many of the matters contained in its original answer.

The plaintiff appellee filed a motion to strike out substantially all of the matters alleged as a defense by the appellant bank in the amended and substituted answer, upon the ground that all of the matters alleged therein ''are either contained in the original answer, and are mere repetitions, or allege grounds which are not proper or permitted after the defenses urged in the original answer had been determined and adjudicated by the Supreme Court, * * * to be insufficient to defeat plaintiff's claim.''

After the former case was reversed and returned, a petition in intervention was also filed by Morris Lundquist, alleging that he participated in the finding of the money in question and is entitled to all or a part of the reward.

I. The errors relied upon for reversal are the court's rulings in sustaining plaintiff's motion to strike most of defendant's amended and substituted answer. Defendant contends that, as this is a law action, the ruling of the Supreme Court in the

appeal from the first trial does not deprive it of the right to amend its answer. Appellant contends that the rule in equity cases does not apply to law actions, that equity actions are triable de novo in the Supreme Court, and its judgment on appeal is necessarily final. This is true in equity actions where, after reversal, they are usually remanded to the lower court for a decree in harmony with the opinion of the Supreme Court.

Appellant contends, however, that, when a case is reversed in a law action, it is sent back for a retrial, and stands as though it had never been tried; and that in such event the defendant is permitted to amend his answer by alleging additional grounds of defense. This contention is supported by statute and a long line of cases. Section 11182 of the Code of Iowa, 1931; Bebb v. Preston, 3 Iowa 325; Gray v. Regan, 37 Iowa 688; Scott v. County of Chickasaw, 53 Iowa 47, 3 N. W. 820; Newman v. Cov. Mut. Ins. Ass'n, 76 Iowa 56, 40 N. W. 87, 1 L. R. A. 659, 14 Am. St. Rep. 196; Hanson v. Cline, 142 Iowa 187, 118 N. W. 754; Knapp v. Brotherhood of Am. Yeoman, 149 Iowa 137, 126 N. W. 336; Landis v. Interurban R. Co., 173 Iowa 466, 154 N. W. 607; In re Estate of Oldfield, 175 Iowa 118, 156 N. W. 977, L. R. A. 1916D, 1260, Ann. Cas. 1917D, 1067; Sanders v. Sutlive Bros., 175 Iowa 582, 154 N. W. 610; Owens v. Norwood-White Coal Co., 181 Iowa 948, 165 N. W. 177; Bruce v. Galvin, 183 Iowa 145, 166 N. W. 787; Buttman v. Christy, 197 Iowa 661, 198 N. W. 314; Green v. Phoenix Ins. Co., 218 Iowa 1131, 253 N. W. 36.

Section 11182 of the 1931 Code provides as follows:

"The court may, on motion of either party at any time, in furtherance of justice and on such terms as may be proper, permit such party to amend any pleadings or proceedings by * * * inserting other allegations material to the case."

This question was fully considered, and the prior Iowa cases reviewed in the case of Buttman v. Christy, 197 Iowa 661, 198 N. W. 314. In that case, this court, speaking through Justice Vermilion, loc. cit. 663, said:

"Two propositions are urged. It is said that after a trial and reversal the issues may not be changed on a retrial. In this proposition is involved the further question whether the amendment was a mere amplification of a ground of objection already

made, or the presenting of an entirely new issue, or ground of objection. It is further urged that the objections originally made raised the question of the execution of the will, and that there was an adjudication of it upon the first trial. \* \* \* The two contentions are obviously more or less inconsistent. If the question was raised by the original objections, the amendment did not present a new ground of objection. On the other hand, if it did present an entirely new ground of objection, it was because the question was not presented by the original objections, in which case there was no adjudication. \* \* \* This proceeding is triable as an action at law, and is heard here only upon error assigned and not de novo. [Citing cases.] An examination of the cases reveals the fact that the practice of amending the petition or answer in a law action after a reversal has been one commonly followed and accepted without question, frequently expressly approved, and in only two instances, so far as we have been able to discover, disapproved.

"The effect of the reversal of a law action for errors of the trial court is a very different thing from the reversal of an action in equity that is triable de novo in this court and where a final judgment is rendered here or in the lower court under direction. It has been often held that, speaking generally, *the reversal of a law action sends it back to the court below for a retrial, and does not authorize a judgment for the successful appellant.* [Italics ours.] Owens v. Norwood-White Coal Co., 181 Iowa 948, 165 N. W. 177; Landis v. Interurban R. Co., 173 Iowa 466, 154 N. W. 607; Bruce v. Galvin, 183 Iowa 145, 166 N. W. 787; Sanders v. Sutlive Bros., 175 Iowa 582, 154 N. W. 610. \* \* \*

"It is apparent from the foregoing cases that the fact that, by the amendment, the issues are changed, as first contended by proponents, presents no insuperable obstacle. Indeed, if the issues were not changed, there would be no occasion for the amendment."

This court, in Buttman v. Christy, reviews most of the previous Iowa cases, and we deem it unnecessary to review them further.

Of the same import is the recent case of Green v. Phoenix Insurance Co., 218 Iowa 1131, loc. cit. 1135, 253 N. W. 36.

It may therefore be conceded that, if the additional facts

pleaded in the amended and substituted answer allege new and additional *defenses,* they may be asserted therein.

■■■ A determination of the correctness of the lower court's ruling in sustaining appellee's motion to strike requires a consideration and a comparison of the allegations of the original answer and those alleged in the amendment.

II. One of the errors relied upon for reversal is that the court struck out the allegation that section 12211, providing compensation for finding lost property, is unconstitutional as depriving the defendant of its property "without due process of law." Although this defense is alleged in various ways in the amended and substituted answer, such allegations substantially urge the "unconstitutionality" of the act, as a violation of the "due process" clause of the Constitution.

We have carefully compared the record in this case with the record in the former case. Defendant's original answer alleges that section 12211 of the Code of Iowa is contrary to and in violation of the Constitution of the state of Iowa, and particularly of section 9, art. I, of said Constitution, and is also contrary to and in violation of the Fourteenth Amendment to the Constitution of the United States. We also find that the attack on the constitutionality of the act is also fully considered by the opinion of the court on the first appeal. In that case we referred to the case of Ahern v. Dubuque Lead & Level Mining Co., 48 Iowa 140, which held a similar statute in relation to awards for ridding mineral lands of water constitutional, and said:

"Section 12211 in effect declares it to be the public policy of this state for the good and welfare of its people to provide a reward to the finder of lost goods. This is not *depriving a person of his property without due process of law,* but is in effect simply awarding a compensation for the service of finding such lost goods. The owner has been benefited by the plaintiff's act in finding the money. We find nothing unconstitutional in the section involved."

The same objection is alleged in the amended and substituted answer in various forms, but all are substantially included in the constitutional objection that they violate the "due process clause" of the State and Federal Constitutions. They are therefore not new or additional defenses, but were substantially in-

cluded in defendant's original answer, and were fully considered and disposed of on the former appeal of this case.

It is therefore our conclusion that the ruling of the lower court in striking substantially similar allegations from the amended and substituted answer was not erroneous.

 III. Defendant also contends that the court erred in sustaining plaintiff's motion to strike that part of the amended and substituted answer alleging that the defendant is a national bank and as such is an agency of the United States government, that Congress has not consented to the Iowa statute authorizing a reward for finding lost property without such consent, and the state has no power to deprive the defendant of its property by offering a reward or providing compensation for services rendered in finding lost property without its request or consent. This is new matter alleged as an additional defense in the amended and substituted answer. Although such allegations may constitute new matter alleged as an additional *defense,* the appellee contends that it does not constitute a defense to plaintiff's cause of action.

The question as to whether or not such allegations constitute a defense at all is fully argued on both sides. We will therefore consider and determine whether or not the fact that the defendant is a national bank would in any manner affect the validity of the act as applied to such banks. Appellant contends that national banks are not subject to the Iowa statute relating to rewards for finding lost property, because no authority to subject national banks to the provisions of such an act has ever been authorized by Congress.

It is true that national banks are not subject to state laws *if they interfere with the purpose of the creation of national banks or destroy their efficiency,* or if they are in conflict with some paramount federal law.

Appellant's contention is based upon the theory that a state has no power through its legislature, courts, or executive to in any manner control or burden the operations of national banks, or impair, impede, or burden their efficiency as a fiscal instrumentality of the government, and that the absence of congressional consent to such legislation amounts to a prohibition and renders any such attempted action of a state absolutely void as to them. It may be conceded that ''national banks are instrumentalities of the federal government, created for a

public purpose, and as such necessarily subject to the paramount authority of the United States,'' and ''that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created.'' Davis v. Elmira Sav. Bank, 161 U. S. 275, 16 S. Ct. 502, 503, 40 L. Ed. 700; Farmers & Merchants Nat. Bank of Buffalo v. Dearing, 91 U. S. 29, 23 L. Ed. 196.

It is likewise true that a national bank is subject to state laws where they do not interfere with the purposes of the bank's creation, destroy its efficiency, or are in conflict with some paramount federal law. Lewis v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 52 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794; First National Bank v. Kentucky, 9 Wall. 353, loc. cit. 362, 19 L. Ed. 701; McClellan v. Chipman, 164 U. S. 347, loc. cit. 356, 17 S. Ct. 85, 41 L. Ed. 461, loc. cit. 465; First National Bank in St. Louis v. Missouri, 263 U. S. 640, loc. cit. 658, 44 S. Ct. 213, 68 L. Ed. 486, loc. cit. 492; Casey, Rec. v. Adams et al., 102 U. S. 66, 26 L. Ed. 52; Merchants Nat'l Bank of Cedar Rapids v. Henderson, 218 Iowa 657, 254 N. W. 65; First Nat'l Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750; Twin Falls Nat'l Bank v. Reed, 44 Idaho, 573, 258 P. 526; Petri v. Bank, 142 U. S. 644, 12 S. Ct. 325, 35 L. Ed. 1144; Continental Nat. Bank v. Buford, 191 U. S. 119, 24 S. Ct. 54, 48 L. Ed. 119; Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433; 7 Corpus Juris, 760; 7 Corpus Juris, 835.

The federal statute provides that all national banking associations established under the laws of the United States shall for the purpose of ''all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located.'' Mason's Code, Title 28, section 41; U. S. Code Ann., title 28, section 41, subsec. 16, at page 34 and page 609.

Section 24 of title 12 of the U. S. Code, p. 259 (12 USCA section 24) provides that national banks have power ''to sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons.''

''This provision puts national banks in the same category

as individuals in suits by and against them. When an individual can sue in a state or federal court, a national bank can do the same thing.'' In such cases the courts have the same jurisdiction as to national banks as they have in cases between individual citizens of the same state. 7 Corpus Juris, 835, section 800.

National banks however cannot be sued, without express authority of Congress, under an act of the state legislature where such act frustrates the purpose of the national legislation or impairs the efficiency of national banks in the discharge of the duties for the performance of which they were created.

''But national banks are subject to the laws of the state and are governed in their daily course of business far more by the laws of the state than by those of the nation. All their contracts are governed and construed by state laws; their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts are all based on state law. It is only where the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.'' 7 Corpus Juris, 760, section 585.

In First National Bank v. Commonwealth of Kentucky, 76 U. S. (9 Wall.) 353, 361, 19 L. Ed. 701, the Supreme Court of the United States said:

''It is argued that the banks, being instrumentalities of the Federal government, by which some of its important operations are conducted, cannot be subjected to such State legislation. It is certainly true that the Bank of the United States and its capital were held to be exempt from State taxation on the ground here stated, and this principle, laid down in the case of McCulloch v. State of Maryland [4 Wheat. 316, 4 L. Ed. 579], has been repeatedly affirmed by the court. But the doctrine has its foundation in the proposition, that the right of taxation may be so used in such cases as to destroy the instrumentalities by which the government proposes to effect its lawful purposes in the States, and it certainly cannot be maintained that banks or other corporations * * * are to be wholly withdrawn from the operation of State legislation. The most important agents of the Federal government are its officers, but no one will contend that when a man becomes an officer of the government

he ceases to be subject to the laws of the State. The principle we are discussing has its limitation, * * * growing out of the necessity on which the principle itself is founded. That limitation is, that the agencies of the Federal government are only exempted from State legislation, *so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government.* Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the States. The salary of a Federal officer may not be taxed; he may be exempted from any personal service which interferes with the discharge of his official duties, because those exemptions are essential to enable him to perform those duties. But he is subject to all the laws of the State which affect his family or social relations, or his property, and he is liable to punishment for crime. * * * So of the banks. They are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.''

In McClellan v. Chipman, 164 U. S. 347, 17 S. Ct. 85, 87, 41 L. Ed. 461, the court said:

''Two propositions have been long since settled by the decisions of this court: First. National banks 'are subject to the laws of the state, and are governed in their daily course of business far more by the laws of the state than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state law. It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional.' First National Bank v. Kentucky, 76 U. S. (9 Wall.) [353], 362 [19 L. Ed. 701]. Second. 'National banks are instrumentalities of the federal government created for a

public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties, or control the conduct of their affairs, is absolutely void, whenever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation, or impairs the efficiencies of these agencies of the federal government to discharge the duties for the performance of which they were created.' Davis v. Elmira Sav. Bank, 161 U. S. [275], 283, 16 S. Ct. 502 [40 L. Ed. 700]. These two propositions, which are distinct, yet harmonious, practically contain a rule and an exception,—the rule being the operation of general state laws upon the dealings and contracts of national banks; the exception being the cessation of the operation of such laws whenever they expressly conflict with the laws of the United States, or frustrate the purpose for which the national banks were created, or impair their efficiency to discharge the duties imposed upon them by the laws of the United States." 7 Corpus Juris, 760; 7 Corpus Juris, 835.

Of similar import are the cases hereinabove cited. It would seem from these decisions that the chief inquiry in this action is whether or not the provisions of section 12211, providing for a reward for lost property, would, if applied to national banks doing business in this state, in any manner interfere with or impair the efficiency of such banks in the performance of their functions in serving the government in the discharge of the duties for the performance of which they were created. Section 12211 in effect declares it to be the public policy of this state for the good and welfare of its citizens to provide a reward to the finder of lost goods. It in effect allows a compensation therefor and fixes the reasonable value of such services. The finding of lost goods and restoring them to their owner cannot be considered an interference with or impairment of the efficiency of the person losing the money, whether it be an individual, a state bank, or a national bank. On the contrary, the restoration of such money to banks *repairs* instead of *impairs* the efficiency of such banks. It needs no argument to show that the loss of one hundred per cent or all of the money would be a much greater burden than the recovery of all of the money burdened with a ten per cent reward allowed to the finder by statute.

It is true there is no express act of Congress authorizing a suit for recovery of the award allowed by the statute in question. It is also true there is no express federal act prohibiting the same. In our opinion, the act in question was enacted for the laudable purpose of aiding people to find lost property, and for that purpose the act must be considered beneficial. If it is beneficial to the public in general, it necessarily follows that it must also be beneficial to national banks. This statute in effect creates a debt due by the bank to the finder of the lost money, and the person to whom said money is restored is liable for a debt created by statute and therefore subject to an action of this kind, the same as all other debts, whether the owner is an individual, a state bank, or a national bank.

It is therefore our conclusion that the act in question applies to national banks as well as state banks or private individuals.

We are therefore constrained to hold that the additional facts alleged in the amended and substituted answer do not constitute a defense to the cause of action alleged in plaintiff's petition, and the lower court did not err in sustaining the motion to strike.

IV. On January 26, 1935, one Morris Lundquist filed a petition of intervention in this action, claiming to be entitled to all or a part of the statutory reward claimed by plaintiff, because he participated in the finding of the lost money. Plaintiff and defendant both denied the allegation of intervener's petition. Two days after the petition of intervention was filed, the case was called for trial.

(1) On January 30, 1935, the intervener filed a motion for a continuance on the ground that intervener was at that time unable to attend the trial on account of sickness. In his motion, he set out certain facts that intervener would testify to if present at the trial, and that he would be unable to prove such facts by any other witness.

Thereupon plaintiff, for the purpose of avoiding a continuance, admitted that the intervener, if present, would testify to all of the facts stated in the motion and affidavit for a continuance, and asked that the motion for the continuance be overruled. The court then overruled intervener's motion and proceeded with the trial.

Intervener contends the court erred in overruling the motion for a continuance. It may be that a motion for a continuance because of intervener's inability to be present might be good in the ordinary case. But in this case the petition of intervention was filed about the time the second trial of this case was reached in January, 1935. The first trial was had about two years prior thereto, and up to the time the petition of intervention was filed no claim had been made by the intervener for any part of the reward for finding the money in question.

█▌█ Section 11175 of the Code provides:

"The court shall determine upon the intervention at the same time that the action is decided, and *the intervener has no right to delay.*" In determining intervener's right to a continuance, this statute must be taken into consideration. The petition of intervention was filed on the eve of the second trial. The intervener then had no right to delay the trial of the case. It was his privilege to dismiss the case and bring a seperate action if he desired.

█▌█ It is the well-settled rule of law in this state that, where a motion for a continuance is based upon the absence of a witness, and the applicant sets out what such witness would testify to if present, the opposing counsel may admit the witness would so testify, and in such event the case will not be continued. Code, section 11445; Jackson v. Boyles, 64 Iowa 428, 20 N. W. 746; Cavanagh v. O'Connor, 194 Iowa 670, 186 N. W. 907.

Section 11445 provides:

"If the application is * * * sufficient, the cause shall be continued, unless the adverse party will admit that the witness, if present, would testify to the facts therein stated, in which event the cause shall not be continued, but the party may read as evidence of such witness the facts held by the court to be properly stated."

The court properly overruled the motion and the case proceeded to trial.

(2) At the close of all of the evidence, the court sustained a motion to direct a verdict in favor of the appellee against the intervener, on the ground that intervener failed to establish the allegations of his petition.

The testimony tended to show that, while intervener was working as a farm hand, near a highway, he saw some men riding in a car, which came to a stop on the road. Some of the men jumped out, one holding what looked like a white sack, and disappeared down an embankment along the roadway. After the men got back into the car and left, the intervener, in company with two others, went over to the highway, looked along the embankment, found articles of clothing and two or three revolvers. They telephoned to the police at Clinton, who also came out and took possession of the clothing and revolvers. The police notified the men of a bank robbery at Clinton, and drove away. After the officers left, the intervener, in company with two of the other men, again examined the embankment. On finding nothing, they abandoned their search and returned to their work. They found no money.

Some time thereafter the plaintiff learned of the episode from his brother, Arvid Flood, and intervener, who were at the farm. After learning of it, he made a search along the embankment and found the money in question. The intervener knew nothing about the presence of any money at that place. All he knew about it was the finding of abandoned clothing and two or three revolvers. He had been at the place where these articles were found, made a search, and, being unable to find anything further, left.

Without reviewing the evidence further in detail, we are satisfied from a careful consideration of the entire record that the intervener did not find or participate in the finding of the money in question.

We have carefully considered all other questions raised, but find no prejudicial error therein.

For the reasons hereinabove expressed, it is our conclusion that the ruling and judgment of the lower court is right, and the same is hereby affirmed.—Affirmed.

DONEGAN, HAMILTON, POWERS, ALBERT, PARSONS, and ANDERSON, JJ., concur.