### NATIONAL BANK *v.* COMMONWEALTH.

1. The right of the States to tax the shares of the National banks reaffirmed.
2. The statute of Kentucky (set forth in the statement of the case), taxing bank stock, levies a tax on the shares of the stockholders, as distinguished from the capital of the bank invested in Federal securities.
3. This is true, although the tax is collected of the bank instead of the individual stockholders.
4. The doctrine which exempts the instrumentalities of the Federal government from the influence of State legislation, is not founded on any express provision of the Constitution, but in the implied necessity for the use of such instruments by the Federal government.
5. It is, therefore, limited by the principle that State legislation, which does not impair the usefulness or capability of such instruments to serve that government, is not within the rule of prohibition.
6. A State law requiring the National banks to pay the tax which is rightfully laid on the shares of its stock is valid under this limitation of the doctrine.
7 On a writ of error to a State court no question will be considered here which was not called to the attention of the State court.

ERROR to the Court of Appeals of Kentucky; the case being this:

The act of Congress establishing the National banks,[*] enacts:

"*Section* 40. That the president and cashier of every such association shall cause to be kept a correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, and such list shall be open to the inspection of the officers authorized to collect taxes under State authority.

"*Section* 41. *Provided*, that nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person, from being included in the valuation of the personalty of such person, in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere; but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. *Provided further*, that the tax so imposed, under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares of any of the banks organized under authority of the State where such association is located."

Under the act of Congress which makes these provisions, the First National Bank of Louisville was established.

A statute of Kentucky,[†] relating to revenue and taxation, lays a tax as follows:

"On bank stock, or stock in any moneyed corporation of loan or discount, fifty cents on each share thereof equal to one hundred dollars, or on each one hundred dollars of stock therein owned by individuals, corporations, or societies."

And the same statute goes on to enact:

"The cashier of a bank, whose stock is taxed, shall, on the first day in July of each year, pay into the treasury the amount of tax due. If such tax be not paid, the cashier and his sureties shall be liable for the same, and twenty per cent. upon the

---

[*] 13 Stat. at Large, 111.

[†] Revised Statutes of Kentucky, vol. ii, pp. 239, 266.

amount; and the said bank or corporation shall thereby forfeit the privileges of its charter."

Acting in professed pursuance of the State statute, the Commonwealth of Kentucky demanded payment from the said bank of $4000, with interest, the sum which a tax of fifty cents per share on the shares of the bank gave. Payment being declined the State sued.

The suit was brought in one of the State courts, and according to the practice of the courts of Kentucky by a petition, setting forth the amount of the tax and claiming a judgment for the same. The answer by the same mode of practice, set up four distinct defences to the action. These were:

1. That the bank was not organized under the law of the State, but under the bank act of the United States, and was, therefore, not subject to State taxation.

2. That it had been selected and was acting as a depositary and financial agent of the government of the United States, and, therefore, was not liable to any tax whatever, either on the bank, its capital, or its shares.

3. That its entire capital was invested in securities of the government of the United States, and that its shares of stock represented but an interest in the said securities, and were therefore not subject to State taxation.

4. That the shares of the stock were the property of the individual shareholders, and that the bank could not be made responsible for a tax levied on those shares, and could not be compelled to collect and pay such tax to the State.

The commonwealth demurred; and the case resulting in a judgment in its favor in the Court of Appeals, this writ of error was prosecuted by the bank.

*Mr. Wills, with a brief of Messrs. Pirtle and Caruth, for the plaintiff in error :*

I. We admit that under recent decisions of this court *shares* in National banks may be taxed in the hands of the

stockholders.*   But this tax is laid, not on shares in the hands of stockholders, but on the capital of the bank itself.

Under the statute of Kentucky the amount of the tax is calculated by charging fifty cents on each one hundred dollars of stock, exacted *in solido* from the bank itself, under penalty of twenty per cent. damages in addition against the cashier and forfeiture of the charter.   This is not a tax upon the shares but on the bank.   The shareholder is neither named nor known in the transaction.   It is a matter between the State and the bank.   The shares of one hundred dollars are used simply as a means of computing the amount of tax on the capital stock.   Without this, or some similar contrivance for estimating, a tax could not be levied on capital stock.   There is not a word said about requiring the bank to pay for the shareholder as a convenience, but it directly, in terms, applies to stock of the banks.   What stock does the bank own except the capital stock, which is identical with itself?   The law requires the cashier of a bank whose stock is taxed, on the first day in July in each year, to pay *the amount due*.   The amount due upon what?   Clearly upon the capital stock. The capital of State banks in Kentucky is not always divided into shares of one hundred dollars each; on the contrary, some of the State banks now in operation, as *ex. gr.*, The Merchants' Bank of Kentucky, are divided into shares of only twenty-five dollars each, and one, The Western Financial Corporation, into shares of five hundred dollars each.

Now, these two banks are taxed annually under the statute, because in Kentucky there are no other laws upon the subject.   The language is "fifty cents on each share thereof equal to one hundred dollars of stock."   If that means a tax upon the share, as the Court of Appeals holds, the shares in the said banks being respectively twenty-five and five hundred dollars, and the law providing only for a tax on shares equal to one hundred dollars, nothing can be clearer than that no tax at all is levied on their shares.

* Van Allen v. The Assessors, 3 Wallace, 573; Bradley v. The People, 4 Id. 459.

II. *A tax on the capital stock of the bank cannot be collected.*

1. Because of its investment in government bonds.*

2. Because of its character as an agency and instrument of the powers of the Federal government.† If there be any one principle of constitutional law now universally acquiesced in, it is that the powers, agents, and means employed by Congress to carry into effect the powers vested by the Constitution in the Federal government must be free from State taxation and control. Taxation would impede, burden, and perhaps destroy the constitutional laws of Congress, and hostile legislation revolutionize our National economy. Such protection is necessary to uphold the nation's credit and preserve the nation's life. The tax imposed in this case upon the plaintiff in error is, in substance and in fact, a tax upon the operations of the bank itself.

III. *Can the law be enforced as a tax on shares?*

The shares in the hands of the shareholders are, under the act of Congress, to be included in the assessment of their personal estate; and, in order that the State officers may have every facility to arrive at the exact number of shares held·by each person, the bank is required to keep, at all times, a list of names of stockholders, number of shares held by each, &c. If the means of collecting the tax be nothing, why is Congress careful to insert the foregoing provision? If the States can coerce the bank itself to pay the tax *in solido* for its stockholders, whence the necessity of the list of stockholders to be open for the inspection of the taxing officers of the State? It was with a view to prevent proceedings such as this one that Congress particularly prescribed the *mode* of collection as well as the extent of it. It was to prevent these organizations from being made the servants and agents of the States in the collection of taxes; to

---

* Weston *v.* City of Charleston, 2 Peters, 449; Bank of Commerce *v.* Commissioners, 2 Black, 620; The People *v.* Commissioners, 4 Wallace, 244.

† McCulloch *v.* State of Maryland, 4 Wheaton, 316; Osborn *v.* Bank of the United States, 9 Wheaton, 738; Dobbins *v.* Commissioners, 16 Peters 435

do which would be to clothe the State with an authority not justified by the constitution, and denied by this court. Without remuneration, and without right, the commonwealth of Kentucky is undertaking to force the plaintiff in error, in its corporate capacity, to collect this tax from its shareholders, and pay the same into the State treasury. Not only so, but penalties of a grave and serious character are imposed upon the bank and its officers in the event of neglect or refusal. Can this burden be imposed? Is it in accordance with the provisions of the act of Congress and the decisions of this court? With great propriety the bank may say to the State: "You have your assessing officers; send them to the bank; they will there find a list of all stockholders, let them assess for themselves the shares of stock for taxation; but you shall not transform our National agency into a State servant, and compel it to perform a burdensome duty, not enjoined by its charter."

IV. *A concession of the right as claimed carries with it means for its enforcement.*

This right, if conceded, may, and actually does, involve the destruction of these National agencies.

"If such tax be not paid," says the statute, "the cashier and his securities shall be liable for the same, and twenty per cent. upon the amount; and the *said bank or corporation shall thereby forfeit the privileges of its charter.*" Such is the law upon which this proceeding is based.

V. *The rate of taxation is higher than allowed by Congress.*

[The learned counsel then went into an exhibition of facts and figures to show this.]

*Mr. Albert Pike, contra.*

Mr. Justice MILLER delivered the opinion of the court.

In the several recent decisions concerning the taxation of the shares of the National banks, as regulated by sections forty and forty-one of the act of Congress of June 3d, 1864,

it has been established as the law governing this court that the property or interest of a stockholder in an incorporated bank, commonly called a share, the shares in their aggregate totality being called sometimes the capital stock of the bank, is a different thing from the moneyed capital of the bank held and owned by the corporation.   This capital may consist of cash, or of bills and notes discounted, or of real estate combined with these.   The whole of it may be invested in bonds of the government, or in bonds of the States, or in bonds and mortgages.   In whatever it may be invested it is owned by the bank as a corporate entity, and not by the stockholders.   A tax upon this capital is a tax upon the bank, and we have held that when that capital was invested in the securities of the government it could not be taxed, nor could the corporation be taxed as the owner of such securities.

On the other hand, we have held that the shareholders, or stockholders, by which is meant the same thing, may be taxed by the States on stock or shares so held by them, although all the capital of the bank be invested in Federal securities, provided the taxation does not violate the rule prescribed by the act of 1864.

It is not intended here to enter again into the argument by which this distinction is maintained, but to give a clear statement of the propositions that we have decided, that we may apply them to the case before us.

If, then, the tax for which the State of Kentucky recovered judgment in this case is a tax upon the shares of the stock of the bank, and is not a tax upon the capital of the bank owned by the corporation, the first, second, and third grounds of defence must fail.

There are, then, but two questions to be considered in the case before us:

1. Does the law of Kentucky, under which this tax is claimed, impose a tax upon the shares of the bank, or upon the capital of the bank, which is all invested in government bonds?

2. If it is found to be a tax on the shares, can the bank

be compelled to pay the tax thus levied on the shares by the State ?

The revenue law of Kentucky imposes a tax " on bank stock, or stock in any moneyed corporation of loan and discount, of fifty cents on each share thereof, equal to one hundred dollars of stock therein, owned by individuals, corporations, or societies."

We entertain no doubt that this provision was intended to tax the shares of the stockholders, and that if no other provision had been made, the amount of the tax would have been primarily collectible of the individual or corporation owning such shares, in the same manner as other taxes are collected from individuals. It is clear that it is the shares owned or held by individuals in the banking corporation which are to be taxed, and the measure of the tax is fifty cents per share of one hundred dollars. These shares may, in the market, be worth a great deal more or a great deal less than their par or nominal value, as its capital may have been increased or diminished by gains or losses, but the tax is the same in each case. This shows that it is the *share* which is intended to be taxed, and not the cash or other actual capital of the bank.

It is said that there may be, or that there really are, banks in Kentucky whose stock is not divided into shares of one hundred dollars each, but into shares of fifty dollars or other amounts, and that this shows that the legislature did not intend a tax of fifty cents on the share, but a tax on the capital. But the argument is of little weight. What the legislature intended to say was, that we impose a tax on the shares held by individuals or other corporations in banks in this State. The tax shall be at the rate of fifty cents per share of stock equal to one hundred dollars. If the shares are only equal to fifty dollars it will be twenty-five cents on each of such shares. If they are equal to five hundred dollars it will be two dollars and fifty cents per share. The rate is regulated so as to be equal to fifty cents on each share of one hundred dollars.

But it is strongly urged that it is to be deemed a tax on

the capital of the bank, because the law requires the officers of the bank to pay this tax on the shares of its stockholders. Whether the State has the right to do this we will presently consider, but the fact that it has attempted to do it does not prove that the tax is anything else than a tax on these shares. It has been the practice of many of the States for a long time to require of its corporations, thus to pay the tax levied on their shareholders. It is the common, if not the only, mode of doing this in all the New England States, and in several of them the portion of this tax which should properly go as the shareholder's contribution to local or municipal taxation is thus collected by the State of the bank and paid over to the local municipal authorities. In the case of shareholders not residing in the State, it is the only mode in which the State can reach their shares for taxation. We are, therefore, of opinion that the law of Kentucky is a tax upon the shares of the stockholder. If the State cannot require of the bank to pay the tax on the shares of its stock it must be because the Constitution of the United States, or some act of Congress, forbids it. There is certainly no express provision of the Constitution on the subject.

But it is argued that the banks, being instrumentalities of the Federal government, by which some of its important operations are conducted, cannot be subjected to such State legislation. It is certainly true that the Bank of the United States and its capital were held to be exempt from State taxation on the ground here stated, and this principle, laid down in the case of *McCulloch* v. *The State of Maryland*, has been repeatedly affirmed by the court. But the doctrine has its foundation in the proposition, that the right of taxation may be so used in such cases as to destroy the instrumentalities by which the government proposes to effect its lawful purposes in the States, and it certainly cannot be maintained that banks or other corporations or instrumentalities of the government are to be wholly withdrawn from the operation of State legislation. The most important agents of the Federal government are its officers, but no one will contend that when a man becomes an officer of the government he

ceases to be subject to the laws of the State. The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle itself is founded. That limitation is, that the agencies of the Federal government are only exempted from State legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the States. The salary of a Federal officer may not be taxed; he may be exempted from any personal service which interferes with the discharge of his official duties, because those exemptions are essential to enable him to perform those duties. But he is subject to all the laws of the State which affect his family or social relations, or his property, and he is liable to punishment for crime, though that punishment be imprisonment or death. So of the banks. They are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We do not see the remotest probability of this, in their being required to pay the tax which their stockholders owe to the State for the shares of their capital stock, when the law of the Federal government authorizes the tax.

If the State of Kentucky had a claim against a stockholder of the bank who was a non-resident of the State, it could undoubtedly collect the claim by legal proceeding, in which the bank could be attached or garnisheed, and made to pay the debt out of the means of its shareholder under its control. This is, in effect, what the law of Kentucky does in regard to the tax of the State on the bank shares. It is no

greater interference with the functions of the bank than any other legal proceeding to which its business operations may subject it, and it in no manner hinders it from performing all the duties of financial agent of the government.

A very nice criticism of the proviso to the 41st section of the National Bank Act, which permits the States to tax the shares of such bank, is made to us to show that the tax must be collected of the shareholder directly, and that the mode we have been considering is by implication forbidden. But we are of opinion that while Congress intended to limit State taxation to the shares of the bank, as distinguished from its capital, and to provide against a discrimination in taxing such bank shares unfavorable to them, as compared with the shares of other corporations, and with other moneyed capital, it did not intend to prescribe to the States the mode in which the tax should be collected. The mode under consideration is the one which Congress itself has adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which, certainly and without loss, secures the payment of the tax on all the shares, resident or non-resident; and, as we have already stated, it is the mode which experience has justified in the New England States as the most convenient and proper, in regard to the numerous wealthy corporations of those States. It is not to be readily inferred, therefore, that Congress intended to prohibit this mode of collecting a tax which they expressly permitted the States to levy.

It is said here in argument that the tax is void because it is greater than the tax laid by the State of Kentucky on other moneyed capital in that State. This proposition is not raised among the very distinct and separate grounds of defence set up by the bank in the pleading. Nor is there any reason to suppose that it was ever called to the attention of the Court of Appeals, whose judgment we are reviewing. We have so often of late decided, that when a case is brought before us by writ of error to a State court, we can only consider such alleged errors as are involved in the record, and actually received the consideration of the State court, that

it is only necessary to state the proposition now. As the question thus sought to be raised here was not raised in the Court of Appeals of Kentucky, we cannot consider it.

JUDGMENT AFFIRMED.