# BELL'S GAP RAILROAD COMPANY *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 1497. Submitted January 27, 1890. — Decided March 3, 1890.

The plaintiff in error failed to make a return of its loans to the state authorities as required by law, whereupon the auditor general, under direction of state law, made out an account against it containing the following charge: "Nominal value of scrip, bonds and certificates of indebtedness held by residents of Pennsylvania, $539,000 — tax three mills — $1617.00." The company appealed from this to the Court of Common Pleas, which decided in its favor, and the Commonwealth from thence to the Supreme Court of the State, which rendered a judgment in favor of the Commonwealth for $666. Among the grounds for the appeal was, that the tax was in violation of section one of the Fourteenth Amendment, because the assessment was for the nominal value, and not for the real value of

the bonds; because the owners of the bonds had no notice, and no opportunity to be heard; because the company was taxed for property that it did not own; and because the deduction of the tax from the interest due the bondholders in Pennsylvania took their property without due process of law, and denied to them the equal protection of the laws. The case being brought to this court from the state court by writ of error, a motion was made to dismiss for want of jurisdiction; to which was united a motion to affirm; *Held,*

(1) That there was clearly a federal question raised, and the writ could not be dismissed for want of jurisdiction;

(2) That although it was doubtful whether, under the rules, there was sufficient color for the motion to dismiss to justify the court in considering the motion to affirm, yet, as the Supreme Court of Pennsylvania, in its opinion did not seem to have expressly passed upon the federal question, which was clearly in the record, the court could consider that there was color for making that motion;

(3) That the provision for the assessment of the tax upon the nominal or face value of the bonds, instead of upon their actual value, was a part of the state system of taxation, authorized by its constitution and laws, and violated no provision of the Constitution of the United States;

(4) That the failure to give personal notice to the owners of the bonds involved no violation of due process of law, when executed according to customary forms and established usages, or in subordination to the principles which underlie them;

(5) That it was not true, in point of fact, that the corporation was taxed for property which it did not own.

The Fourteenth Amendment was not intended to compel the States to adopt an iron rule of equal taxation.

MOTIONS: (1) To revoke the allocatur and quash the writ of error; (2) To dismiss for want of jurisdiction; (3) To affirm the judgment below. The case is stated in the opinion.

*Mr. William S. Kirkpatrick,* Attorney General of the Commonwealth of Pennsylvania, and *Mr. John F. Sanderson,* Deputy Attorney General for the motions.

*Mr. James W. M. Newlin* opposing.

MR. JUSTICE BRADLEY delivered the opinion of the court.

Motion is made in this case to revoke the allocatur of the writ of error, and to quash the writ, and, in the alternative,

to affirm the judgment. The first motion is based on the assumption that the writ was improperly allowed by the judge, and questions the propriety of his action. It is probable that the counsel who makes the motion does not intend it in that sense, but is merely unfamiliar with the practice of this court, by which the ordinary proceeding to vacate a writ of error is a motion to dismiss it.

In the present case we think that the writ was demandable, and cannot be dismissed, as will more fully appear from the following statement:

By the law of Pennsylvania all moneyed securities are subject to an annual state tax of three mills on the dollar of their actual value, except bonds and other securities issued by corporations, which are taxed at three mills on the dollar of the nominal or par value. If the treasurer of a corporation fails to make return of its loans, as required by law, the auditor general makes out and files an account against the company, charging it with the tax supposed to be due. This account, if approved by the state treasurer, is served upon the corporation, which must pay the tax within a specified time, or show good cause to the contrary. If it objects to the tax, it is authorized, in common with all others who are dissatisfied with the auditor's stated accounts, to appeal to the Court of Common Pleas of the county where the seat of government is (at present Dauphin County), which appeal is served on the auditor general, and by him transmitted to the clerk of said court, to be entered of record, subject to like proceedings as in common suits. A declaration is then filed on the stated account in behalf of the State, and the cause is regularly tried.

In the present case, on failure of the company (The Bell's Gap Railroad Company) to make return except under protest, the auditor general made out an account against it containing the following charge:

" Nominal value of scrip, bonds, and certificates of
   indebtedness owned by residents of Pennsyl-
   vania $539,000 — tax three mills . . . . . $1617 00 "

The company thereupon tendered an appeal, which was filed in the Court of Common Pleas of Dauphin County, a declaration was filed on the part of the State, and the cause was tried by the court, a jury being waived.

The appeal filed by the corporation (which was the basis of the proceedings in the court) contained eight grounds of objection to the tax. Most of these objections were founded upon the constitution, or laws of Pennsylvania, and need not be noticed here. The second objection, which refers to the Constitution of the United States, was as follows, to wit:

"II. The report of the company's treasurer was made under protest and does not constitute an assessment, and the tax sought to be imposed on so much of the company's loans as the Commonwealth claims to be held by residents of Pennsylvania for their nominal or face value, which varies from the market value on account of the differing rates of interest, etc., is illegal, and the said tax cannot be lawfully deducted by the company's treasurer from the interest payable to the holders of said loans, and the Commonwealth's demands contravene section one of the Fourteenth Amendment to the Constitution of the United States, for the following reasons:"

Amongst the reasons then assigned are:

1. That the nominal value of the bonds is not their real value;

2. That the owners of the bonds have no notice, and no opportunity of being heard;

3. That the company is taxed for property it does not own;

4. That the deduction of the tax from the interest payable to the bondholders is taking their property without due process of law, and denies to them the equal protection of the laws, since all other personal property in the State is taxed at its actual value, and upon notice to the owners.

The seventh objection is as follows: "VII. The tax is void as impairing the company's obligation to its creditors."

On the trial of the cause the State offered in evidence the stated account, and the plaintiff in error offered the appeal and specification of objections and an affidavit of its treasurer. The Court of Common Pleas decided in favor of the company,

but its decision was reversed on writ of error by the Supreme Court of Pennsylvania, and judgment was rendered in favor of the Commonwealth for $666, being the amount of tax on bonds shown to have been owned by residents of Pennsylvania.

It cannot be denied that the plaintiff in error, in its appeal and specification of objections to the tax, did raise a question under the Constitution of the United States. That question remained in the record as the foundation of the proceedings in the court, and, whether adverted to, or not, was necessarily involved in the final decision of the case. We think it clear, therefore, that the writ of error cannot be dismissed. Our only doubt is, whether, under our rules, there was sufficient color for the motion to dismiss, to justify us in considering the motion to affirm. As, however, the Supreme Court of Pennsylvania, in its opinion, does not seem to have expressly passed upon the federal question, although it was clearly in the record, we may consider that there was color for making the motion to dismiss.

On the merits we have no serious doubt.

1. *As to the assessment of the tax of three mills upon the nominal or face value of the bonds, instead of assessing it upon the actual value.* This might have been subject to question under the state laws; but the state courts have upheld the assessment as valid. We are to accept it, therefore, as part of the state system of taxation, authorized by its constitution and laws. Then, how does it violate any provision of the Constitution of the United States? It is contended that it violates the first section of the Fourteenth Amendment, which forbids a State to withhold from any person the equal protection of the laws. We do not perceive that the assessment in question transgresses this provision. There is no unjust discrimination against any persons or corporations. The presumption is that corporate securities are worth their face value. Besides, the person that holds them is not affected by the tax unless he receives his interest from which the tax is deducted. So long as the interest is paid the security has to him full productive value; when it is not paid he pays no tax.

But, be this as it may, the law does not make any discrimination in this regard which the State is not competent to make. All corporate securities are subject to the same regulation. The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt.

The general purpose and scope of the Fourteenth Amendment, and the general qualifications necessary to be applied to it, are well stated in *Barbier* v. *Connolly*, 113 U. S. 27, 31. Mr. Justice Field, in delivering the opinion of the court, there said : " The Fourteenth Amendment, in declaring that no State 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances, in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice, no different or higher punishment should be imposed upon one than such as is prescribed to all for like offences. But neither the amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity."

With due regard to these considerations, we are clearly of opinion that the method of assessing the tax in question, on the face value of corporate securities in Pennsylvania, is not violative of the Fourteenth Amendment to the Constitution.

2. *As to want of notice to the owners of the bonds.* What notice could they have which the law does not give them ? They know that their bonds are to be assessed at their face

value, and that a tax of three mills on the dollar of that value will be imposed; and that they will only be required to pay this tax when, and as, they receive the interest. If the State may assess the tax upon the face value of the bonds, notice *in pais* is not necessary. We think that there is nothing in this objection which shows any infraction of the Federal Constitution. It is urged that it is a taking of the bondholder's property without due process of law. We must confess that we cannot see it in this light. The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law, when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them. We see nothing in the process of taxation complained of, which is obnoxious to constitutional objection on this score. Stockholders in the national banks are taxed in this way, and the method has been sustained by the express decision of this court. *National Bank* v. *Commonwealth,* 9 Wall. 353.

3. *That the corporation is taxed for property it does not own.* This objection is not true in point of fact. The corporation, as the debtor of its bondholders, holding money in its hands for their use, namely, the interest to be paid, is merely required to pay to the Commonwealth out of this fund the proper tax due on the security. The tax is on the bondholder, not on the corporation. This plan is adopted as a matter of convenience, and as a secure method of collecting the tax. That is all. It injures no party. It certainly does not infringe the Constitution of the United States by making one party pay the debts and support the just burdens of another party, as is implied in the objection.

The other objections are embraced in those which we have already considered, and need no further notice.

We would say, in conclusion, that there are several decisions of this court which virtually dispose of most of the questions involved in the present case. We refer particularly to *National Bank* v. *Commonwealth,* 9 Wall. 353; *The Dollar*

*Savings Bank* v. *United States,* 19 Wall. 227, 240 ; *King* v. *United States,* 99 U. S. 229 ; *Hagar* v. *Reclamation District No. 1,* 111 U. S. 701 ; *Davidson* v. *New Orleans,* 96 U. S. 97 ; *Walston* v. *Nevin,* 128 U. S. 578, 581.

 *The motion to dismiss the writ of error is denied, and the judgment of the Supreme Court of Pennsylvania is affirmed.*