CHARLESTON NAT. BANK v. MELTON, Ex-Sheriff.

(Circuit Court, S. D. West Virginia. July 14, 1909.)

No. 389.

1. TAXATION (§ 604*)—TAX ON NATIONAL BANK SHARES—REMEDY FOR ILLEGAL TAXATION.

A national bank or stockholder therein has the right to go into a federal court of equity to test the validity, under Rev. St. § 5219 (U. S. Comp. St. 1901, p. 3502), of a tax levied by state authority on the stock of the bank, where there is no adequate remedy at law in such court, notwithstanding a remedy provided by the state statute.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1228; Dec. Dig. § 604.*]

2. TAXATION (§ 604*)—TAX ON NATIONAL BANK SHARES—REMEDY FOR ILLEGAL TAXATION—SUIT BY BANK.

Where a state statute provides for a tax on the stock of a national bank and requires the bank to pay it, the bank is in effect made a trustee and has the right to resort to a court of equity to determine its duty for its protection against the state, on the one hand, and the stockholders, on the other.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1228; Dec. Dig. § 604.*]

8. TAXATION (§ 386*)—TAX ON NATIONAL BANK SHARES—VALIDITY OF STATUTE.

The validity of a state statute providing for the taxation of national bank stock is not affected by the fact that it does not provide for any deduction from the valuation on account of any United States bonds held by the bank.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 646, 647; Dec. Dig. § 386.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. TAXATION (§ 113*)—TAX ON NATIONAL BANK SHARES—VALIDITY OF STAT-
UTE.**

Provisions of a state statute for the taxation of national bank stock, requiring the cashier of the bank to pay the taxes assessed against its stockholders, and making him and the bank liable therefor, and for a penalty in addition in case of default, are not illegal as applied to a bank which has in its possession dividends or other funds belonging to its stockholders sufficient to pay the taxes assessed against them.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 207; Dec. Dig. § 113.*]

**5. TAXATION (§ 611*)—TAX ON NATIONAL BANK SHARES—REMEDY FOR WRONG-
FUL ENFORCEMENT—INJUNCTION.**

While a provision of a state revenue statute that stockholders in national banks shall not be entitled to any deduction from the assessed valuation of their shares because of debts owed by them, while owners of other "money, credits, or investments" are allowed such deduction, is invalid as applied to a stockholder who owes debts and who has not sufficient other money, credits, or investments from which such debts may be deducted, as subjecting him to taxation "at a greater rate than is assessed on other moneyed capital in the hands of individual citizens" of the state, in violation of Rev. St. § 5219 (U. S. Comp. St. 1901, p. 3502), it is not so invalid as to a stockholder who is not actually affected by it to his detriment, and a bill filed by a bank to enjoin the collection of taxes imposed on its stockholders because of such provision must allege facts showing the portion of the tax so rendered illegal, and that the valid portion has been paid or tendered, in order to entitle the complainant to equitable relief.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1250; Dec. Dig. § 611.*]

In Equity. On motion for preliminary injunction and demurrer to bill.

This bill was filed on the 24th day of March, 1909, by the plaintiff for and on behalf of its stockholders generally, seeking, on several grounds, to restrain the collection of taxes assessed for the year 1908 against the shares of stock owned by all the stockholders of plaintiff bank.

The bill avers: That the defendant, Melton, was lately sheriff of Kanawha county, W. Va., and, although his term as such sheriff expired December 31, 1908, it is still his duty under the law to collect all taxes and assessments for the year 1908 still uncollected; that it has a capital stock of $500,000, divided into shares of $100 each, which stock is held by a large number of shareholders in West Virginia and in other states; that on the 1st day of January, 1908, it was the owner of bonds of the United States aggregating $500,900 in value; that by section 67, c. 80, p. 366, of the Acts of the Legislature of West Virginia for the year 1907 (Code Supp. 1907, § 751), in listing money, credits, or investments, the person owning the same may have deducted therefrom the amount of the indebtedness which he owes to others as principal debtor; but that by section 79 of said chapter of said acts (Code Supp. 1907, § 763) it was provided that the shares of stock in a national banking association should be assessed at their true and actual value to the several holders thereof, in the county, district, and town where such association is located, and "no deductions shall be allowed from the valuation of such shares of stock on account of what is due another as principal debtor or otherwise, notwithstanding the provisions of any other section or sections of this chapter"; that said section further provides that the cashier of such bank shall pay the taxes assessed upon such shares, and in default of such payment such officer, as well as the bank, shall be liable for such taxes, and, in addition, for a sum equal to 10 per centum thereof, and any taxes so paid upon such shares may, with interest thereon, be recovered from

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the owners thereof, or may be deducted from the dividends accruing on such shares.

Plaintiff then pleads the provision of section 5219, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3502), that the taxation of shares in a national banking association "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," and avers on information and belief that on the 1st day of January, 1908, there were large sums of money, amounting to many hundred thousands of dollars, of moneyed capital in the hands of individual citizens of said state of West Virginia, and used by them in making loans, discounts, and investments, and periodically collected, or the interest thereon collected and reloaned, rediscounted, and reinvested, and that such transactions come into competition with the business of plaintiff and other national banks, and that by the provisions of the two sections of the assessment laws of West Virginia before referred to (sections 67 and 79) a discrimination is created against the shareholders in national banks, in violation of said section 5219, Rev. St. U. S.

Plaintiff further avers that on the 1st day of January, 1908 (as of which date the assessment complained of was made) "a large number of the shareholders of the said plaintiff were severally indebted to others as principal debtors to large amounts, and to amounts, as plaintiff is informed, believes, and so charges, in excess of other money, credits and investments owned by them respectively, and from which their said indebtedness might be deducted, and plaintiff says and alleges that, after said shareholders, or many of them, had deducted the debts which they owed as principal debtors to others from the other money, credits, and investments owned by them, there remained large sums owed by them as such principal debtors, which, by reason of said statute and said instructions, they were prohibited from deducting from the value of their said bank shares for taxation."

While the foregoing quotation violates the laws of subtraction, I think it may be clearly gathered that, as to certain unnamed stockholders, it is alleged that after they had set off, as against the amount of their debts due as principal debtors, all of their other money, credits, and investments, there still remained debts which they owed to others as principal debtor.

The plaintiff further avers: That when, in obedience to law, its proper officers gave to the assessor the list of its shareholders with the number of shares owned by each, the said assessor, in arriving at the value of the shares of stock for taxation, made or allowed no deduction for the value of the United States bonds owned by the bank; nor was any deduction provided for on account of any indebtedness of the individual shareholders. That the assessor was asked, on behalf of plaintiff and its shareholders, if he would allow the amounts owing by said shareholders as principal debtors to be deducted from the value of their respective shares, and he answered that he would not do so. That thereupon the return was made and delivered in the form prescribed, and a protest against the assessment was delivered to the assessor, a copy of which protest is exhibited with the bill, and shows that the ground thereof was the refusal of the assessor to deduct the value of the bonds owned by the bank in arriving at the value of the shares for taxation.

The plaintiff avers that the stockholders were assessed upon their shares of stock at a valuation of $152.34 per share, making a total valuation of $761,700, allowing no deductions on account of their indebtedness, upon which valuation taxes were assessed aggregating $6,471.65, now in the hands of the defendant for collection. The allegation is renewed that the laws under which these assessments were made are void, and the assessments illegal and void, and that, nevertheless, the defendant, unless restrained therefrom, will proceed to collect said levies, etc.

The prayer of the bill is that said section 79, and all laws under which said assessment was made, be declared null and void, and that the plaintiff and its cashier and officers, and its several stockholders, be relieved from the payment of said taxes so assessed against them severally, and all penalties and interest thereon, and for general relief.

When the demurrer was set for argument, the plaintiff presented an amendment to its bill setting up the invalidity of section 79, c. 80, Acts 1907,

because of the requirement that the cashier of a national bank shall pay the taxes assessed against its shareholders, under penalty of being held (together with the bank) liable for such taxes, as well as a sum equal to 10 per centum thereof, regardless of the fact whether such cashier, or the bank, have in possession or control any money or funds of the respective shareholders; but it did not therein aver that, as to any of its shareholders, there were not any (or not sufficient) funds belonging to such shareholders in its hands or under its control to enable it to pay the taxes assessed against such shareholders or any of them.

Plaintiff in this amendment repeats the prayer of its original bill, and further prays that, if the court is of opinion that any taxes should be due from it, its officers or shareholders, then it refers this case to a master to ascertain what taxes may be due from whom, and what deductions should be allowed to any of its shareholders, respectively, by reason of any debts owed by them to others as principal debtors. Upon motion for a temporary injunction, and demurrer to the bill.

S. S. Green and Mollohan, McClintic & Mathews, for plaintiff.

W. G. Conley, Atty. Gen., W. M. O. Dawson, T. C. Townsend, Frank Lively, and W. R. Byrne, for defendant.

KELLER, District Judge (after stating the facts as above). On March 22, 1909, a judge of the Circuit Court for the Southern District of West Virginia granted to the plaintiff a temporary restraining order "restraining and enjoining the defendant, J. J. Melton, ex-sheriff of Kanawha county, W. Va., and his deputies, from collecting the taxes mentioned and described in said bill, or the interest or penalties thereon, or any part thereof, or any of them, from said plaintiff, its cashier, secretary, or accounting officer, or any of its stockholders, and from levying on or distraining and selling the property of the said plaintiff or any of its officers or shareholders for the satisfaction of said taxes, interest or penalties"; and the motion for injunction was set down for hearing at Charleston, and was considered in connection with the demurrer.

Various grounds presented in the written demurrer filed were argued by counsel, but I shall not consider them in order, and, indeed, shall not refer to some of them save incidentally.

The principal reliance in argument was placed upon the propositions that: (1) The plaintiff has a full and complete remedy provided by statute; (2) complainant is not entitled to the interposition of a court of equity because it has not done equity by paying or offering to pay any part of the taxes assessed against its shareholders, a large portion of which, it is averred, are, under all the decisions, unquestionably due and owing and should be paid before relief is sought against the collection of the remainder, if any; and (3) no relief can be granted because the bill does not set out the names of shareholders of the bank whose debts the plaintiff alleges should have been deducted from the value of their respective shares of stock, nor show the amounts of such shareholders' respective debts.

In the view I have taken of this case, I am compelled to overrule the first ground of demurrer mentioned, for the reason that the statutory method provided by law for the correction of an erroneous assessment does not provide a legal defense against the action of an officer seeking to enforce the collection of an assessment alleged to be wholly or partly illegal, but only provides a means by which a

taxpayer may affirmatively assert, first in an administrative tribunal, and afterwards by appeal to the Circuit Court, and thence to the Supreme Court of Appeals, his objections to an assessment made in accordance with a state statute, alleged to be in direct contravention of the federal statute which alone gives to the state the right to tax shares of stock in national banks, and for the further reason that, upon the alleged invasion of a right or privilege reserved by a federal law, plaintiff has a right to have such federal question (being a corporation created by federal law) decided by a federal tribunal, and no remedy at law in such tribunal exists.

Nor is the bank in a condition where it has an adequate remedy at law by paying the entire tax under protest and suing at law to recover it, or so much of it as may be illegal. As pointed out by Mr. Justice Miller in Cummings v. Merchants' Nat. Bank of Toledo, 101 U. S. 153, 25 L. Ed. 903:

> The bank, in paying the money, "is acting in a fiduciary capacity as the agent of the stockholders, an agency created by the statute of the state. If it pays an unlawful tax assessed against the stockholders, they may resist the right of the bank to collect it from them. The bank, as a corporation, is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each stockholder. If it refuses, it must either withhold dividends and subject itself to litigation by so doing, or refuse to obey the laws and subject itself to suit by the state. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties pertaining to it. To prevent a multiplicity of suits equity may interfere."

The next proposition of demurrant is that "he who seeks equity must do equity," and that, applying this rule, complainant fails to show equitable grounds for relief in its bill.

Before further consideration of this point, it may be well to consider certain of the allegations of the bill, and determine from the adjudicated cases what portions of the bill present matter which, from any view of the case, would be the subject of equitable cognizance and relief. Plaintiff contends that the fact that, in ascertaining the true and actual value of the shares of its stock in the hands of its shareholders, no deduction is allowed under the assessment laws of West Virginia, on account of its ownership of $500,900 of United States bonds, renders such assessment illegal and void. Under the decisions this fact affords no ground whatever for the claim of illegality or discrimination. Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229; Exchange Nat. Bank v. Miller (C. C.) 19 Fed. 372; National State Bank v. Burlington, 119 Iowa, 696, 94 N. W. 234; People v. Tax Commissioners, 4 Wall. 244, 18 L. Ed. 344; First Nat. Bank of Louisville v. Kentucky, 9 Wall. 353, 19 L. Ed. 701.

In the amendment to its bill the complainant insists that the provisions of section 79 of chapter 80 of the Acts of 1907, requiring the taxes assessed thereunder upon the shares of any national bank to be paid by the cashier, and providing that in default thereof such cashier, as well as the bank, shall be liable for such taxes, and in addition for a sum equal to 10 per centum thereof, etc., are illegal, null, and void, for reasons fully set out therein. It is sufficient to

say that the bill does not allege, as regards any of its stockholders, that the bank has not sufficient funds of the stockholder in its possession and under its control to pay any and all taxes legally assessed or assessable against the shares of stock of such stockholder. It might be that an attempt to make the bank pay the tax of a shareholder, when there were no accrued dividends or earnings upon the shares of stock owned by such shareholder in the hands of the bank out of which such payment could be made, would amount to an attempt to make one party pay the debt of another; but, surely, there can be no objection to the payment of the tax on behalf of the shareholders, when the bank does have funds in its hands equitably belonging to its shareholders sufficient for the purpose.

In First National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 703, Mr. Justice Miller, speaking of the alleged illegality and unconstitutionality of a similar statute of Kentucky, said:

"It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We do not see the remotest probability of this, in their being required to pay the tax which their stockholders owe to the state for the shares of their capital stock, when the law of the federal government authorizes the tax. If the state of Kentucky had a claim against a stockholder of the bank who was a nonresident of the state, it could, undoubtedly, collect the claim by legal proceedings, in which the bank could be attached or garnished, and made to pay the debt out of the means of its shareholder under its control. This is, in effect, what the law of Kentucky does in regard to the tax of the state on the bank shares."

In Cummings v. Merchants' Nat. Bank of Toledo, 101 U. S. 153, 25 L. Ed. 904, it was said:

"In the case of Bk. v. Com., we held that a statute of Kentucky, very much like this, which enabled the state to deal directly with the bank in regard to the tax on its shareholders, was valid and authorized a judgment against the bank which refused to pay the tax. 9 Wall. 353, 19 L. Ed. 701. It is true the statute of Kentucky went further than the Ohio statute, by declaring that the bank must pay the tax, while the latter says it may."

Having thus shown that the assessment laws of West Virginia are not invalid either because they do not permit the deduction of the value of United States bonds owned by the bank, in arriving at the value of its shares for assessment in the hands of its shareholders, or for the reason that the law requires the payment of the taxes assessed to the shareholders upon their shares to be made by the cashier or by the bank, the only remaining question is whether these laws are rendered invalid, and the assessments void, by reason of the inhibition contained in section 79 against the allowance of any deduction upon the assessed valuation of bank shares because of money owed by the holder thereof to others as principal debtor.

I have no doubt but that so much of section 79, c. 80, Acts 1907, as prohibits the deduction, in a proper case, from the value of shares in a national bank, of debts due to others as principal debtor by the owner of such shares, while, by section 67 of the same act, all other private individuals are allowed to deduct such debts owed by them from the value of their "money, credits and investments," is in conflict with section 5219, Rev. St. U. S., as being, in effect, taxation of such

shares "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens" of the state, and that, to the extent that any assessment upon the holder of shares in a national bank operates to increase his rate of taxation above that upon "other moneyed capital in the hands of individual citizens of such state," the same is illegal and void; but this is far from saying that the entire assessment is void, or that, in all cases, any part of an assessment under this act is illegal or void. For example, if the shareholder in a national bank has no debts to deduct, the assessment, as to him, is unaffected by that part of the law denying the right to a deduction of debts from the value of bank shares; or if he has other money, credits, and investments of a value sufficient to permit him to deduct from it all of the debts he owes as principal debtor, he is not injured by the denial of the right to deduct such debts from the value of his bank shares. So that it is only in cases where the shareholder is prohibited, to his detriment, from deducting his debts from the value of his bank shares, that this provision of the law works any actual discrimination or injustice against the owner of such property, and it is only in the case of injury that the right to redress exists.

The bill of the plaintiff proceeds upon the theory that this defect in the law renders the assessment of any tax upon shares of stock in national banks illegal and void. If that proposition could be sustained, it would sustain this bill and warrant all the relief prayed for therein.

This precise point has been decided by the Supreme Court of the United States in a number of cases, in all of which the position taken by the plaintiff has been denied. In Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1050, the court, by Mr. Justice Miller, after accepting the construction of the act of 1866 (Laws 1866, c. 761), by the Court of Appeals of the state of New York as not authorizing any deduction for debts by a shareholder in a national bank, goes on to say:

"What is there to render it void as to a shareholder in a national bank, who owes no debts which he can deduct from the assessed value of his shares? The denial of this right does not affect him. He pays the same amount of tax that he would if the law gave him the right of deduction. What legal interest has he in a question which only affects others? Why should he invoke the protection of the act of Congress in a case where he has no rights to protect? Are courts to sit and decide abstract questions of law in which the parties before the court show no interest, and which, if decided either way, affects no right of theirs? * * * There is no difficulty here in drawing the line between those cases in which the statute does not apply and those to which it does, between the cases in which it violates the act of Congress and those in which it does not. There is therefore no necessity of holding the statute void as to all taxation of national bank shares, when the cases in which it is invalid can be readily ascertained on presentation of the facts."

This case establishes the general proposition that:

"In a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter are to be disregarded."

Again, in People's Nat. Bank v. Marye, 191 U. S. 282, 24 Sup. Ct. 72, 48 L. Ed. 185, it is said:

"We concede that if the law were unconstitutional because, for instance, there was no constitutional power to tax the particular property, there is no necessity to pay anything; but where some part of the law may be unconstitutional because of a failure to comply with some matter of detail, but the amount which the owner of the property ought to pay is perfectly clear under the provisions of law, then, if the taxpayer desire to be exempted from paying more than his share, he must pay his proportion, before equity will aid him in his effort to escape paying a disproportionate share."

And in State Railroad Tax Cases, 92 U. S. 575, 616, 23 L. Ed. 663, 674, the court said:

"Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them. * * * It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The state is not to be thus tied up as to that of which there is no contest, by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be . tendered, and tendered without the condition of a receipt in full for all the taxes assessed."

It is true that in Fargo v. Hart, 193 U. S. 499, 24 Sup. Ct. 498, 48 L. Ed. 761 et seq., it was held, inter alia, that tender is not a prerequisite to injunctive relief against an assessment made upon unconstitutional principles; but the decision in that case proceeded upon the impossibility of determining what, if anything, the plaintiff ought to pay, and it was held that the company had made the only offer it could, which was to give security for the payment of any amount adjudged to be due.

That is not a parallel case to the one at bar. In this, the bill seeks to restrain the collection of taxes assessed against stockholders who are not alleged to be affected by the only provision of the assessment law of West Virginia which can render any part of the tax obnoxious to the federal law. It asserts the entire invalidity of all the taxes assessed against the stockholders; whereas, the court can see that, as to stockholders owing no debts, no defense exists, and no complete defense exists as to any stockholders except such as may have debts, as principal debtors, to the full value of their stock, and have no other money, credits, or investments from which to deduct such debts.

All of these facts, so essential to determine what relief by injunctive process, if any, the plaintiff is entitled to on behalf of any of its stockholders, are conclusively presumed to be within the knowledge. of the complainant; but none of them were set up, because, as I suppose, it was relying on the entire invalidity of the tax. Having held that that claim is untenable, it follows that this case falls into the category of such decided cases as People's Nat. Bank v. Marye, 191 U. S. 272, 24 Sup. Ct. 68, 48 L. Ed. 180, requiring payment, or at least tender, of the amount of tax justly and equitably due, as a condition precedent to the interposition of a court of equity to restrain the collection of the residue.

It follows that the temporary restraining order heretofore awarded must be dissolved, and the bill herein dismissed for want of equity, but without prejudice to the institution of any other suit to restrain the collection of any portion of the taxes illegally assessed against any stockholder or stockholders of plaintiff, provided that payment or tender has been or shall first be made of such portion, if any, of any such taxes as, under the views herein set forth, are held to be lawfully assessed against said stockholders, or any of them.