Matthias, J.
 

 The question of' law presented in these cases may be concisely stated as follows:
 

 Were the taxes in question assessed on the shares •of stock of the several banks or upon the property of the banks?
 

 The record discloses that any question of discrimination against the banks and in favor of building and loan companies was abandoned and need not now be -considered.
 

 Under the provisions of Section 5408, General Code, as in effect January 1, 1931, taxes were levied on the •shares of stockholders of a bank in like manner as the taxes on other personal property. Section 5408 provided as follows:
 

 “All the shares of the stockholders in an incorporated bank or banking association, located in this state, incorporated or organized under the laws of the state or of the United States, and all the shares of the stockholders in an unincorporated bank, located in this state, the capital stock of which is divided into shares held by the owners of such bank, and the capital employed, -or the property representing it, in an unincorporated
 
 *13
 
 bank the capital stock of which is not divided into-shares, located in this state, shall be listed at the true value in money, and taxed only in the city, ward, or village where such bank is located.”
 

 Section 5409, General Code, provided:
 

 “The real estate of a bank or banking association shall be taxed in the place where it is located, in like manner as the real estate of persons is taxed.”
 

 The further statutory provisions involved are Sections 5672 and 5673, General Code, as in force and effect at the time these taxes were levied. They were as follows:
 

 Section 5672. “Taxes assessed on shares of stock,, or the value thereof, of a bank or banking association, shall be a lien on such shares from the first Monday of May in each year until they are paid.
 

 “It shall be the duty of every bank or banking association to collect the taxes due upon its shares of stock from the several owners of such shares, and to pay the same to the treasurer of the county, in which such bank or banking association is located, as other-taxes are paid, and any bank or banking association failing to pay the said taxes as herein provided, shall be liable by way of penalty for the gross amount of the taxes due from all the owners of the shares of stock, and for an additional amount of one hundred dollars for every day of delay in the payment of said taxes.”
 

 Section 5673. “Such bank or banking association paying to the treasurer of the county in which it is located, the taxes assessed upon its shares, in the-hands of its shareholders respectively, as provided in the next preceding section, may deduct the amount thereof from dividends that are due or thereafter become due on such shares, and shall have a lien upon the shares of stock and on all funds in its possession belonging to such shareholders, or which may at any time come into its possession, for reimbursement of the'
 
 *14
 
 taxes so paid on account of the several shareholders, with legal interest; and such lien may be enforced in any appropriate manner.”
 

 The taxes involved in these cases were placed on the tax duplicate by the county auditor in the name of the various banks, and not in the name of the individual owners of the shares as shown by the statements filed by the banks.
 

 The Court of Appeals based its decision entirely upon the case of
 
 Miller, Treas.,
 
 v.
 
 First National Bank,
 
 46 Ohio St., 424, 21 N. E., 860. While the issues in that case were similar to those of the instant case, the statute then in effect was essentially different. The statutory provisions applicable in that case were embodied in Sections 2839 and 2840, Revised Statutes, which read as follows:
 

 Section 2839. “Any taxes assessed on any shares of stock or the value thereof, of any bank or banking association, shall be and remain a lien on such shares from the first Monday of May in each year until such taxes are paid; and in case of the non-payment of such taxes at the time required by law by any shareholder, and after notice received of the county treasurer of the non-payment of such taxes, it shall be unlawful for the cashier or other officer of such bank or banking association to transfer of permit to be transferred the whole of any portion of said stock, until the delinquent taxes thereon, together with costs and penalties, shall be paid in full; and no dividend shall be paid on any stock so delinquent, so long as such taxes, penalties, and costs, or any part thereof, remain due and unpaid. ’ ’
 

 Section' 2840. “It shall be lawful for any such bank or banking association to pay to the treasurer' of the county in which such bank or banking association may be located, the taxes that may be assessed upon its shares, as aforesaid;-in the hands of its shareholders, respectively, and deduct the same from any dividends
 
 *15
 
 that may be due or may thereafter become due on any such shares, or deduct the same from any funds in its possession belonging to any shareholder, as aforesaid.” It is to be observed that under these statutory provisions the bank was authorized but not required to pay the taxes upon its shares and deduct the sums so paid not only from dividends due or thereafter to become due on such shares, but also from any funds in its possession belonging to any shareholder.
 

 The question, and the only question, decided in the
 
 Miller case
 
 is clearly and concisely stated in the first paragraph of the syllabus, which reads:
 

 “There is no authority in the statutes of the state, nor of the United States, for listing and valuing the shares in a national bank in the aggregate, and placing such aggregate on the tax-list in the name of the bank. Such shares, when listed and valued for taxation, are required to be placed on the proper tax-list in the names of the respective owners.”
 

 The statutory provisions then in effect not only conferred no authority to charge the tax on the duplicate in the name of the bank, but imposed no duty whatever on the bank to collect the tax.
 

 The provisions of Sections 5672 and 5673, General Code, are of somewhat different import and effect and are controlling in the disposition of these cases. These statutes were amended -as they now read subsequent to the decision in the case of
 
 Aberdeen Bank
 
 v.
 
 Chehalis County,
 
 166 U. S., 440, 41 L. Ed., 1069, 17 S. Ct., 629. The Aberdeen bank had likewise made the complaint that the statute of the state of Washington which it challenged levied the tax on the bank instead of the owners of the shares, and violation of the provisions of Section 5219, U. S. Revised Statutes (February 10, 1868); 15 Stats, at L., 34, Chapter 7, was charged. The Washington statute provided that “each bank and banking association shall be liable to pay any taxes
 
 *16
 
 assessed against them as the agent of each of its shareholders, owners or owner under the provisions of this act, and may pay the same out of their individual profit account or charge the same to their expense account, or to the accounts of such shareholders, owners or owner in proportion to their ownership.”
 

 The court held that, by reason of this provision of the Washington statute, there was no ground for the •contention that the taxation of “the capital of the ¡bank” was contemplated by the statute under consideration. The opinion of the court in the
 
 Aberdeen •case
 
 approves and applies the decision of the same court in the case of
 
 First National Bank of Louisville
 
 v.
 
 Commonwealth,
 
 76 U. S. (9 Wall.), 353, 19 L. Ed., 701, which involved the construction of a statute of the state of Kentucky providing in substance that a tax should be levied on the “bank stock, or stock in any moneyed corporation of loan or discount, fifty cents on each share thereof equal to $100, or on each $100 of .■stock therein owned by individuals, corporations, or societies.”
 

 Such statute contained the further provision that “the cashier of a bank, whose stock is taxed, shall, on the first day in July of each year, pay into the treasury the amount of tax due. If such tax be not paid, the cashier and his sureties shall be liable for the same, and twenty per cent upon the amount.”
 

 The contention there made was that the bank could not be made responsible for a tax levied on the shares of stock which were the property of the individual stockholders and could not be compelled to collect and pay such tax.
 

 In the course of the opinion in that case it was stated as follows:
 

 “It is strongly urged that it is to be deemed a tax on the capital of the bank, because the law requires -.the officers of the bank to pay this tax on the shares of
 
 *17
 
 its stockholders. Whether the state has the right to do this we will presently consider, but the fact that it has attempted to do it does not prove that the tax is anything else than a tax on these shares. It has been the practice of many of the states for a long time to require of its corporations thus to pay the tax, levied on their shareholders. It is the common, if not the only, mode of doing this in all the New England states, and in several of them the portion of this tax which should properly go as the shareholders ’ contribution to local or municipal taxation is thus collected by the state of the bank and paid over to the local municipal authorities. In the case of shareholders not residing in the state, it is the only mode in which the state can reach their shares for taxation. We are, therefore, of opinion that the law of Kentucky is a tax upon the shares of the stockholder. * * *
 

 “A very nice criticism of the proviso to the 41st section of the National Bank Act (now Section 5219 of the Revised Statutes), which permits the states to tax the shares of such bank, is made to us to show that the tax must be collected of the shareholder directly, and that the mode we have been considering is by implication forbidden. But we are of opinion that while Congress intended to limit state taxation to the shares of the bank, as distinguished from its capital, and to provide against a discrimination in taxing such bank shares unfavorable to them, as compared with the shares of other corporations, and with other moneyed capital, it did not intend to prescribe to the states the mode in which the tax should be collected. The mode under consideration is the one which Congress itself has adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which, certainly and without loss, secures the payment of the tax on all the shares, resident or .non-resident; and, as we have already stated,
 
 *18
 
 it is the mode which experience has justified in the New England states as the most convenient and proper, in regard to the numerous wealthy corporations in those states. It is not to be readily inferred, therefore, that Congress intended to prohibit this mode of collecting a tax which they expressly permitted the states to levy.”
 

 The court, in the
 
 Aberdeen case,
 
 after calling attention to the portion of the opinion in the case of
 
 National Bank
 
 v.
 
 Commonwealth, supra,
 
 above quoted, cited as supporting the doctrine therein announced, the cases of
 
 Bell’s Gap Rd.
 
 v.
 
 Pennsylvania,
 
 134 U. S., 232, 33 L. Ed., 892, 10 S. Ct., 533, and
 
 Van Slyke
 
 v.
 
 Wisconsin,
 
 154 U. S., 581, 20 L. Ed., 240, 14 S. Ct., 1168.
 

 The tax in the instant cases, just as the tax under consideration in the
 
 Aberdeen case,
 
 is a tax on shares of stock properly assessed for the payment of which each bank was made liable by the specific provisions of statute. The
 
 Aberdeen case
 
 is unreversed, and the doctrine there announced, which in our opinion is clearly applicable here, has not been modified by the subsequent decisions relied upon by counsel for the banks, which are
 
 Owensboro National Bank
 
 v.
 
 City of Owensboro,
 
 173 U. S., 664, 43 L. Ed., 850, 19 S. Ct., 537, and
 
 First National Bank of Gulfport
 
 v.
 
 Adams, Rev. Agt.,
 
 258 U. S., 362, 66 L. Ed., 661, 42 S. Ct., 323.
 

 In the comparatively recent case of
 
 Colorado National Bank of Denver
 
 v.
 
 Bedford,
 
 310 U. S., 41, 84 L. Ed., 1067, 60 S. Ct., 800, the Supreme Court of the United States had for consideration the validity of the Colorado statute laying a percentage tax on the users of the safety deposit services of banks measured by the banks’ charges for the services and requiring the banks to collect the taxes, account for them to the state and include them in their bills for the services. The court held that the statute “requiring a national bank to collect and remit the tax does not impose an uncon
 
 *19
 
 stitutional burden on a federal instrumentality.” In support of that proposition, the court cites the case of
 
 National Bank
 
 v. Commonwealth,
 
 supra.
 

 The court, however, reiterated previous holdings in various other cases there cited, in substance that a “tax is invalid if laid upon the bank as an instrumentality of government * * #; that its banking operations are free from state taxation except as Congress may permit; that Congress permits the taxation only of shares and real estate; and that Congress may intervene to protect its instrumentalities from any other tax which threatens their usefulness.”
 

 As heretofore stated, the liability of a bank to pay taxes lawfully assessed on the shares of its stockholders is created by Sections 5672 and 5673, G-eneral Code. The former section provides that taxes assessed on the shares of the stockholders of the bank are “a lien on such shares from the first Monday of May in each year until they are paid.”
 

 The latter section provides that the bank, upon payment of the taxes assessed, has “a lien upon the shares of stock and on all funds- in its possession belonging to such shareholders, or which may at any time come into its possession for reimbursement of the taxes so paid on account of the several shareholders, with legal interest.”
 

 We find no other statutory provisions which specificcally create a lien on behalf of a county for the payment of the taxes in question. In the absence of statutory authority, such taxes do not become a lien upon the real estate of the bank. The liability of the bank is limited by the specific provisions of the statute previously referred to. It follows that there is no valid lien now on the real estate of the bank for the taxes in question, but they may be collected by an appropriate action on the part of the county treasurer.
 

 However, the apportionment of the tax on the duplicate to the various shareholders is not a prerequi
 
 *20
 
 'site to the proceeding of the treasurer to enforce the liability imposed on the bank by statute. For the reasons heretofore stated, the court is in accord with the contention of counsel for the banks that the taxes due and unpaid are not a valid lien on the real estate owned by the bank and to that extent they are entitled to the relief sought. This leads to an affirmance of the judgments in that respect only. In all other respects the judgment in each case is reversed.
 

 Judgments accordingly.
 

 Weygandt, C. J., Hart, Zimmerman and Turner, JJ., concur.
 

 Bell and Williams, JJ., not participating.